**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiffs,**

v.

**R.H. WEBER EXPLORATION, INC., Richard H. Weber, Joseph M. Altemore, III, Stanley R. Lemon, Stephen D. King, Noel E. Brown, L.M. Smith, Raymond R. Kramer and Robert G. Stone, M.D., Defendants.**

No. 84 Civ. 4960 (EW).

United States District Court, S.D. New York.

April 8, 1985.

D'Amato & Lynch, New York City, for plaintiffs; Robert E. Meshel, Timothy P. Butler, of counsel.

Baldwin, Gilliland & Jones, Dallas, Tex., Olshan, Grundman & Frome, New York City, for defendants; Bruce Baldwin, Dallas, Tex., David Parker, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This diversity action is before the Court on motions by defendants (1) to dismiss or stay the action upon the ground that a prior action is pending in the Northern District of Texas, Dallas Division (the "Texas Court") or, alternatively, (2) to transfer the action to that district.

Plaintiff, National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), is a Pennsylvania corporation with its principal place of business in New York City, within this district. The defendant R.H. Weber Exploration, Inc. ("Weber Exploration") is a Texas corporation with its principal place of business in Dallas, Texas and defendant Richard Weber, a Texas resident, is its president and director. Weber Exploration was the general partner in various limited partnerships

that acted as co-venturers in a Texas joint venture known as North American Liquid Disposal 1982–I ("North American" or the "Venture"). The seven other defendants in this action were limited partners in the Venture and all are residents of Texas. Each of the seven limited partners executed and delivered his promissory note to North American as part of his capital contribution to the Venture.

J. Henry Schroder Bank & Trust Company ("Schroder" or the "Bank"), not a party to this action, is an authorized banking institution with its principal place of business in New York City, within this district. Schroder extended a one million dollar line of credit to North American, which North American secured by assigning to the Bank the promissory notes it had received from the limited partners as part of their capital contributions to the Venture. Thereafter, National Union issued to North American a Financial Guarantee Bond (the "Bond") that guaranteed payment to Schroder of the installments due on the promissory notes of the limited partners. The Bond provided that National Union would cure a default by a limited partner by making payment directly to Schroder, designated in the Bond as the "Permitted Assignee." The complaint herein further alleges that to induce National Union to issue the Bond each of the limited partner defendants executed an Indemnification and Pledge Agreement with National Union providing that he would repay and reimburse National Union for any and all sums it paid to Schroder under the terms of the Bond and legal and other expenses incurred by reason of his respective default. Weber Exploration and Richard Weber executed a similar Indemnification Agreement covering a default by any of the limited partners. Finally, the Bond provides that, upon payment of any claims thereunder, National Union is subrogated to the rights of the Bank against any defendant who is liable under the terms of a defaulted note.

On December 23, 1983, Schroder notified National Union that each limited partner defendant was in default with respect to a payment then due upon his note. On February 14, 1984, National Union's counsel notified each limited partner that Schroder had notified it of his default and had demanded payment by National Union in accordance with the Bond. Each limited partner was requested to cure his default and advised that unless cured and if "National Union performs in accordance with the terms of its bond, National Union will proceed against you in accordance with the Indemnification and Pledge Agreement signed by you." The defendants did not respond to the demand. Thereupon, on February 24, 1984, National Union paid Schroder $219,589.36 pursuant to the Bond. On May 8, 1984, National Union made demand upon Weber Exploration, Richard Weber, and the limited partners for reimbursement pursuant to their indemnification agreements, but again they did not respond. Instead, the limited partners, on May 24th, commenced an action in the Texas Court against both Schroder and National Union by filing a complaint,[1] which, together with a summons, however, was not served[2] upon Schroder until September 1984 or upon National Union until October 2, 1984.

Prior to the service of the aforesaid process, National Union, on July 12, 1984, commenced this action against the defendants to recover the amounts it had paid to Schroder as well as counsel fees and related costs, as specified in their indemnification agreements.

In the Texas action, the limited partners alleged in their complaint that disputes had arisen as to the interpretation of the loan agreements entered into by Schroder and the limited partners, more particularly, as

---

**1.** Rule 3, Fed.R.Civ.P., provides: "A civil action is commenced by filing a complaint with the court."

**2.** Rule 4, Fed.R.Civ.P., provides: "Upon the filing of the complaint the clerk shall forthwith issue a summons and deliver the summons to the plaintiff or the plaintiff's attorney, who shall be responsible for prompt service of the summons and a copy of the complaint."

to whether or not Schroder, in its sole discretion, had the right to apply the monies received by it from the limited partners as installment payments to whatever portions of the outstanding loans it desired. The relief sought is reformation of the loan agreements as memorialized in various documents in order to conform them to the claimed intent of the parties. After commencement of this action, the limited partners, on September 24, 1984, filed an amended complaint in the Texas action alleging, among other matters in addition to the foregoing, that the loan documents contain misstatements such as the borrower "is a 'Texas limited partnership' when in fact it is a Joint Venture"; "the proper name of the Joint Venture is North American Liquid Disposal 82–1, not 82–2"; and "the sum borrowed is variously reflected as $1,100,000 and $1,000,000." In sum, however, the essential claim is that Schroder applied the money received from the limited partners to unsecured portions of the loans instead of to secured portions and in fact they were not in default on their payments to the Bank.

█ Preliminarily, we consider defendants' contention that National Union was required to file its claim here asserted as a compulsory counterclaim in the Texas action and accordingly this action should be dismissed. They rely upon the fact that having commenced their action first by filing their complaint in May 1984 (after receipt of National Union's demand for payment), they were the first in time. However, as noted, service of process in that suit was not effected upon National Union until October 1984, several months after National Union had instituted this action and had made prompt service of process upon all the Texas plaintiffs, the defendants herein. The limited partners' rush to the Texas Court in anticipation of National Union's action against them does not necessarily carry the day for them. As this Court recently stated:

in our Circuit the "first filed" rule "is not to be applied in a mechanical way regardless of other considerations." And the Supreme Court has observed that "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems" but is left to the sound discretion of trial judges. [T]he courts should be concerned with what the interests of justice require and not with who won the race.[3] .

National Union, not having been served with process in the Texas action until several months after it commenced this action, could not have pleaded in response thereto, whether in denial of the limited partners' claims or to assert any defense, claim, or counterclaim. Second, National Union's claim here is based upon each limited partner's indemnification agreement, whereas the limited partners' claim in the Texas action seeks reformation of the loan agreements entered into by Schroder, the Venture, and the limited partners—agreements to which National Union was not a party. The commitments of the limited partners under their loan agreements with Schroder which they seek to reform are entirely independent of their commitments under their indemnification agreements with National Union. Thus, National Union's claim is not one that arises out of the same transaction or occurrence that is the subject matter of the limited partners' claims in their Texas suit and defendants herein are not entitled to dismissal of this action on that asserted ground.

█ The defendants' alternative motion for a transfer pursuant to 28 U.S.C. § 1404(a) requires consideration of the issues presented under the claims asserted by the litigants in their respective actions. A significant factor on a motion to transfer is the interests of justice, "a term broad enough to cover the particular circumstances of each case, which in sum indicate that

---

**3.** *National Patent Dev. Corp. v. American Hosp. Supply Corp.,* No. 84 Civ. 3411, slip op. at 8–9 (S.D.N.Y. Nov. 21, 1984).

the administration of justice will be advanced by a transfer." [4] There can be no doubt the interests of justice require that, if the issues in two separate actions pending in separate districts and involving the same parties can be resolved in one or the other of the actions, a wasteful duplication of effort and expense of the litigants and the resources of the judicial system should be avoided by a transfer and a consolidation of one action with the other. On the other hand, however desirable the conservation of judicial resources and the avoidance of unnecessary expense to the litigants and loss of time to them and their witnesses, such purpose may not serve to deprive a party asserting a valid claim of his right to a prompt adjudication of the claim. The burden of proof to support the transfer is upon the movants.[5]

▪ A prime factor to be considered is whether the issues in both actions are substantially the same and whether their determination rests upon the same factual matters. The limited partners in their Texas action seek reformation of the loan agreements upon a claim that the agreements do not reflect their "explicit understanding" with respect to the application of their payments on account of the loans, in consequence of which they assert they were not in default when Schroder so declared them and in turn made its demand upon National Union for payment. However, as already noted, National Union was not a party to the loan agreements, and there is no claim in the Texas action that the indemnification agreements executed by the limited partners do not reflect the intent of the parties thereto nor is reformation sought of those agreements. Thus, National Union stresses that the issues in the Texas action are irrelevant here and contends that the underlying loan agreements between Schroder and the defendants have no bearing upon their well defined obligation to indemnify National Union once it made payment to Schroder under the Bond. Essentially, National Union argues that it, too, was under a well defined obligation under the terms of the Bond to pay Schroder upon receipt of its notice of default by the defendants—that having received such notice it could not have raised any question based upon defendants' now asserted "explicit understanding" with Schroder and have refused the Bank's demand for payment under the Bond. In sum, National Union argues that whatever the intent of the parties to the underlying loan agreements—that is, of Schroder and the limited partners—that intent has no bearing on the issues in this lawsuit—namely whether, upon receipt from Schroder of notice of defendants' default, National Union was obligated to cure the claimed default and, having made the required payment, is entitled to be made whole by the defendants under their indemnification agreements.

▪ Without attempting at this juncture of the litigation to make any definitive determination of the issues that may inhere in this action, the Court is of the view that the interests of justice require that the defendants' motion for a transfer be denied. It is significant, in light of the defendants' currently asserted claim upon which they seek reformation of the loan agreements with Schroder, that when National Union notified the defendants of Schroder's demand upon National Union for payment because defendants were in default, no defendant responded or raised any issue that he was not in default; that several months later, when National Union, having paid Schroder, made demand upon defendants for reimbursement, in default of which they were advised a lawsuit would be instituted to enforce their liability under the indemnification agreements, the defendants again remained silent and made no contention with respect to liability under the loan agreements with Schroder; and that their only response was within a matter of days to commence their Texas action without effecting service of process until several months after the instant action was commenced. And it is of no less signifi-

---

**4.** *Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D. N.Y.1967) (footnote omitted).

**5.** *Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung,* 250 F.Supp. 744, 755 (S.D.N.Y.1966).

cance that although, in an amended complaint filed in the Texas action after National Union sought recovery, defendants allege no fewer than five separate claims which, in effect, dredge up about every conceivable defense that legal textbooks provide to resist a claim for payment, not one limited partner has filed an affidavit in support of the instant motions containing a single evidentiary allegation to give substance to the claim for reformation of the loan documents. Thus, while none of these matters is determinative of whatever issues may ultimately have to be resolved in this suit (defendants to date have filed no answer herein), National Union's claim that defendants' rush to the courthouse was an "obfuscatory" ploy to avoid the day of judgment does have some support. Under these circumstances, defendants' filing first is without substantial import, and the fact that all defendants are residents of Texas is of little or no significance. Delaying tactics should not be rewarded.

Accordingly, defendants' motion to transfer is denied.

So ordered.