In re REPETITIVE STRESS INJURY CASES PENDING IN the UNITED STATES DISTRICT COURT FOR the EASTERN DISTRICT OF NEW YORK.

**Anna M. BURROUGHS and Raymond Burroughs, Plaintiffs,**

**v.**

**NORTHERN TELECOM, INC. and Northern Telecom Ltd., Defendants.**

**Nos. 92 Misc. 110, 92 CV 872.**

United States District Court, E.D. New York.

June 2, 1992.

Steven J. Phillips, Levy, Phillips & Konigsberg, New York City, for 37 plaintiffs.

Michael A. Ponterio, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, N.Y., for 13 plaintiffs.

Arthur C. Lakind, Szaferman, Lakind, Blumstein, Watter & Blader, Lawrenceville, N.J., amicus, for plaintiffs in New York State Court.

Thomas Liptak, Saperston & Day, Buffalo, N.Y., for Apple Computer.

Alfred R. Paliani, Edwards & Angell, New York City, for AT & T and NCR Corp.

Joseph A. D'Avanzo, Michael A. Cerussi, Cerussi & Spring, White Plains, N.Y., for IBM.

Suzanne Perla, Standard, Weisberg, Heckerling & Rosow, New York City, for C. Itoh and Panasonic.

Christopher Kendrie, Ahmuty, Demers & McManus, Alberston, N.Y., for Memorex Corp.

Michael Milner, Emily Daniel, The Law Firm of Michael Milner, New York City, for Northern Telecom.

Kurt L. Weinmann, Barbarini & Scher, New York City, for Quixote.

Robert D. Owen, James H. Neale, Owen & Davis, New York City, for Wang Laboratories.

Ellen M. O'Neill, Frank H. Penski, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., for Atex and Eastman Kodak.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

Plaintiffs in these actions have styled as "repetitive stress injury" (RSI) cases a number of suits for injuries allegedly caused by the routine use of computers, adding machines, supermarket checkout scanners and other mechanical and electrical devices. They have moved to consolidate 44 such cases now pending in the Eastern District, claiming that the cases represent the vanguard of what will be related mass litigations against numerous manufacturers and employers for these occupational injuries. Carpal Tunnel Syndrome, which affects the wrist and hand, is one of the chief injuries claimed.

All defendants oppose consolidation in this district. In addition, Northern Telecom has moved to transfer the *Burroughs* action to the Southern District of New York so that it may be consolidated with cases pending before a judge of that court. For the reasons stated below, the motion to consolidate the cases in the Eastern District is granted.

## I

*Burroughs v. Northern Telecom, Inc.* is a diversity action in which Anna Burroughs alleges permanent injuries from using a computer keyboard and video terminal manufactured by defendants. On April 14, 1992, counsel for Northern Telecom moved for a transfer of venue pursuant to 28 U.S.C. § 1404(a). That section provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The main ground for the motion is that four cases against the same defendant alleging the same basic fact pattern are pending in the District Court for the Southern District of New York before Judge Kram. Defendants contend that transfer would bring the benefits normally associated with consolidation: efficient discovery, minimized inconvenience for witnesses and rational use of judicial resources. In opposition, plaintiffs note that their choice of venue should not be ignored and that the parties and many witnesses reside in the Eastern District, a forum as convenient as the Southern District.

On May 12, 1992, counsel representing 37 plaintiffs in 31 separate cases involving RSI claims moved by order to show cause to have all pending RSI cases in the Eastern District combined for all purposes before a single judge. An affidavit accompanying the order to show cause indicates that, apart from the 31 new cases, 13 other RSI suits, of which *Burroughs* is one, had previously been filed in this district. The cases are listed below with the name of the judge to whom they are assigned. 16 such cases are also reportedly pending in the Southern District of New York and 84 in the state courts of New York. The affida-

vit also avers that many more cases are expected to be filed in the future in both federal and state courts.

At oral argument, counsel for Mr. and Mrs. Burroughs and for the other RSI plaintiffs in federal court in the Eastern District of New York joined in seeking consolidation. Counsel for plaintiffs in the state litigations also appeared as amicus in support of plaintiffs' motion.

Defendants argued that consolidation would increase the costs of the litigation since all attorneys will have to attend all depositions and court appearances. Several of the defendants named in the order to show cause also objected to consolidation on the more specific grounds that "repetitive stress injury" is not an identifiable condition, but is instead a label for a variety of symptoms whose cause and treatment vary substantially and which ought to be handled separately.

All parties consented to supervision of discovery in all the cases before a single magistrate judge whether or not the cases were consolidated before a single district judge.

## II

The considerations supporting consolidation of actions pending before several judges in one district are the same as those which support transfer of like cases to a single venue and consolidation of trials under Rule 42 of the Federal Rules of Civil Procedure. *Compare National Union Fire Ins. Co. v. R.H. Weber Exploration, Inc.*, 605 F.Supp. 1299, 1303 (S.D.N.Y.1985) ("There can be no doubt the interests of justice require that, if the issues in two separate actions pending in separate districts and involving the same parties can be resolved in one or the other of the actions, a wasteful duplication of effort and expense of the litigants and the resources of the judicial system should be avoided by a transfer and a consolidation of one action with the other.") *with Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir.) (under Rule 42, district court must consider "whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on

parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.") (citations omitted), *cert. denied,* —— U.S. ——, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990).

All of the reasons cited by defendant Northern Telecom in support of transfer to the Southern District favor consolidation in this district. Consolidation before one judge and magistrate judge will provide for convenience and economy of effort. If the cases are related, repetitive discovery can be avoided. If, as defendants suggest, they are not related, the district judge or magistrate judge can provide separate treatment or full severance.

It may well be desirable to transfer all Eastern and Southern District cases to a single judge in one of the two districts, possibly through the judicial panel on multidistrict litigation under 28 U.S.C. § 1407. Alternatively, the Chief Judge of the Second Circuit could designate a judge of either district to sit in both districts to accomplish the same result. The latter technique was used successfully in the asbestos cases. *See In re E. & S. Dists. Asbestos Litig.,* 772 F.Supp. 1380, 1384 (E. & S.D.N.Y.1991). The possibilities for interdistrict consolidation can be addressed in the future.

The asbestos and DES cases demonstrate that, after consolidation, cooperation between judges in the state and federal courts can be fruitful. *See Ashley v. Abbott Labs.,* 789 F.Supp. 552, 563 (E.D.N.Y. 1992) (federal-state cooperation in DES cases); *In re E. & S. Dists. Asbestos Litig.,* 129 F.R.D. 434 (E. & S.D.N.Y. & N.Y.Sup. Ct.1990) (cooperation in asbestos cases).

Congress, state legislatures, and the courts have yet to develop a satisfactory set of rules for the fair and efficient processing of mass litigation. Considerable cooperation among bench, bar and litigants to achieve prompt, fair and efficient resolution of such cases is required.

[T]he limitations of the present system are so severe that, as a practical matter, they can be overcome only by negotiations between lawyers in which a large part of the exchange is mutual forbearance from exploiting those limitations. The result might be called bargaining in the shadow of no law, with immense transaction costs to the litigants.

American Law Institute, *Complex Litigation Project,* Tentative Draft No. 3, at xv (March 31, 1992); *see also Ashley v. Abbott Labs.,* 789 F.Supp. 552 (E.D.N.Y.1992) (discussing jurisdictional and other problems raised by mass DES tort).

Defendants suggest that consolidation may lead to increased costs. Their contention is supported by the relatively low ratio of plaintiff recoveries to transaction costs in mass cases. Failure to consolidate and take other appropriate steps to control the litigation as soon as possible would only increase transaction costs as well as the burdens on the courts. *See In re A.H. Robins Co.,* 880 F.2d 709, 725 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989); *In re Asbestos Prods. Liab. Litig.* (No. VI), 771 F.Supp. 415 (Jud.Pan. on MDL 1991) (consolidating all asbestos cases); *see also In re Joint E. & S. Dist. Asbestos Litig.,* 129 B.R. 710, 811–16 (E. & S.D.N.Y.1991). As the President's Council on Competitiveness has reminded us, minimizing transaction costs is as important to American industry as it is to injured plaintiffs and the general public. *See Ashley v. Abbott Labs.,* 789 F.Supp. 552, 575 (E.D.N.Y.1992) (noting possible anti-competitive effects of limits on courts' jurisdiction over foreign defendants).

A properly controlled mass tort case need not adversely affect American industry and its competitiveness. With good will on all sides, if intelligent steps are taken at the outset, fair substantive results can be accomplished without excessive costs. *Cf. generally* J. Dertouzos & L. Karoly, *Labor–Market Responses to Employer Liability* xiii (1992) (publication of Institute for Civil Justice, RAND Corp.) (cost of employment discrimination litigation compared to impact in the order of 1 percent).

A significant feature of these cases supporting consolidation is the fact that the litigation is still in its infancy. Courts do not always have the opportunity to coordinate their efforts to process a related mass of cases at this stage. The late stage at which the asbestos cases were consolidated was a major factor contributing to the great expense of that litigation. Acceptable transaction costs are much more likely if cases are brought under the supervision of one judge or a few judges working together at the outset. *See* 28 U.S.C. § 1407 (providing for consolidation through judicial panel on multidistrict litigation); *Manual for Complex Litigation (Second)* (1985).

Experience with mass litigation indicates that courts are in the best position to minimize litigation costs and to help achieve satisfactory resolution of individual cases when scientific information concerning injuries and causation and the legal theories of the cases are fully developed at an early stage of the litigation. This is most likely to occur through early consolidation, which will allow parties and the court to obtain access to and encourage development of scientific and other relevant information and to develop alternative legal theories.

Early coordination and strict control of discovery is essential and will be enhanced by appointing a single magistrate judge for this purpose. Where cases display a common factual pattern or a few such patterns, uniform discovery requests can be used to minimize waste in accordance with the dictates of Federal Rule of Civil Procedure 26(b). Experts and databases can be shared to eliminate redundant testimony and expense.

Panels of experts can be formed under Federal Rule of Evidence 706 both to advise on scientific matters and to develop protocols for design and use by employees that may help reduce the probability of future harm. *See In re E. & S. Dists. Asbestos Litig.*, 772 F.Supp. 1380, 1386 (E. & S.D.N.Y.1991); *Findley v. Blinken*, 122 B.R. 6 (E. & S.D.N.Y.1990); *Lora v. Board of Educ.*, 587 F.Supp. 1572, 1573 (E.D.N.Y. 1984) (appointment of expert panel to advise schools, students and parents on special needs education).

Settlement can be coordinated through a special master appointed under Rule 53 of the Federal Rules of Civil Procedure. With the cooperation of the state courts, a joint special master-referee can be appointed to oversee settlement efforts. This procedure has proven effective in fostering settlements of hundreds of asbestos and DES cases brought in New York state and federal courts. *See, e.g., In re DES Cases*, 142 F.R.D. 58 (E.D.N.Y. & N.Y.Sup.Ct. 1992) (appointing joint special master-referee in DES cases).

Using appropriate procedural devices and modified forms of alternative dispute resolution, satisfactory resolution of controversies which involve large numbers of workers, unions, employers and manufacturers can be resolved relatively cheaply. Cooperation among the parties, the court, and federal and local government agencies to alleviate present and future problems may result. *See Lora v. Board of Educ.*, 456 F.Supp. 1211, 1294–95 (E.D.N.Y.1978) (order arranging for cooperation between authorities to remedy discrimination in schools for special-needs children), *vacated on other grounds*, 623 F.2d 248 (2d Cir. 1980).

As in recent asbestos cases, the judge assigned to the consolidated cases can oversee the cases generally, while another judge or other judges selected by the assigned judge oversees settlement discussions. Where trials are required, the controlling judge can call on other judges to try cases individually or in groups. This technique was used in the asbestos cases pending in the Southern and Eastern Districts of New York. *See In re E. & S. Dists. Asbestos Litig.*, 772 F.Supp. 1380, 1386 (E. & S.D.N.Y.1991). It resulted in the prompt trial or settlement of all asbestos cases in the federal courts in the Southern and Eastern Districts of New York and also of thousands of cases in state and other federal courts.

An indirect benefit of consolidation is the pooling of knowledge. Attorneys for all parties and potential parties will be better informed and able to reach more equitable dispositions of cases more quickly and at less cost. Dissemination of information

may reduce future injury by alerting the public to potential hazards. By involving experts and representatives of workers, producers and the medical profession who are significantly affected by the litigation, the judicial process can serve a proactive as well as a compensatory function. *See Lora,* 456 F.Supp. at 1214–15 (noting ameliorative action voluntarily taken during pendency of suit).

Defendants' concern that there is no exact identity of issues is not decisive. Discovery can be subdivided. *See In re E. & S. Dists. Asbestos Litig.,* 772 F.Supp. 1380, 1386 (E. & S.D.N.Y.1991). The cases could be treated as a class action with subclasses, or classes could be formed with respect to particular issues. *See* Fed.R.Civ.P. 23(c)(4).

Whether cases ought to be tried at all may be determined promptly on a motion for summary judgment after relatively brief discovery. If differences in injuries, causation or legal theories create the need for separate trials, cases can be severed at any time.

## III

The motion to combine the pending RSI cases in the Eastern District is granted. Accordingly, the motion of Northern Telecom to transfer the *Burroughs* action is denied.

The practice in this district is to send all related cases to the Eastern District judge to whom the case with the lowest docket number (indicating the earliest filing date) was assigned. All pending cases alleging RSI injuries are to be consolidated before that judge.

Court records indicate that the first such case was sent to United States District Judge Denis R. Hurley upon his confirmation in December, 1991 pursuant to standard procedures for allocating existing cases by random selection to new judges. Accordingly, these cases will be consolidated before Judge Hurley, who has consented. At Judge Hurley's discretion, the cases may be assigned to one or more Magistrate Judges in accordance with the powers granted under the standing orders and practice of the Eastern District. In

accordance with the usual collegial relationship among the Judges and Magistrate Judges of this court, all stand ready to assist Judge Hurley if called upon to do so.

The following cases are consolidated in accordance with this order, subject to any order of Judge Hurley to reassign as newly revealed circumstances warrant: