**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 1/8/97**

**TENTH CIRCUIT**

REGINA M. YODER, LESTER L.
YODER,

        Plaintiffs-Appellants,

    v.

HONEYWELL INC., BULL HN INFOR-
MATION SYSTEMS, INC., formerly
known as Honeywell Information
Systems, Inc.,

        Defendants-Appellees.

No. 95-1464

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 94-B-1256)**

Richard M. Foster of Cockrell, Quinn & Creighton, Denver, Colorado (Marc W. Wein-
garten of Greitzer & Locks, Philadelphia, Pennsylvania, with him on the briefs), for
Plaintiffs-Appellants.

Russell S. Ponessa (Robert B. MacDonald, also of Popham, Haik, Schnobrich & Kauf-
man, Minneapolis, Minnesota; Robert J. Potrykus and Giovanni M. Ruscitti, Denver,
Colorado; and Bert L. Wolff of Skadden, Arps, Slate, Meagher & Flom, New York, New
York, with him on the brief) for Defendant-Appellee Honeywell Inc.
Daniel F. Warden of Bond & Morris, Denver, Colorado, for Defendant-Appellee Bull HN
Information Systems, Inc.

Before **HENRY**, **LOGAN** and **BRISCOE**, Circuit Judges.

**LOGAN**, Circuit Judge.

Plaintiffs Regina M. and Lester L. Yoder appeal the district court's dismissal of their products liability action against defendants Honeywell Inc. (Honeywell) and Bull HN Information Systems, Inc. (Bull). Regina Yoder allegedly suffered repetitive stress injuries as a result of using defective computer keyboards while employed at United Airlines in Denver, Colorado. Plaintiffs assert that summary judgment was improper because material issues of fact remain as to whether (1) Bull was the alter ego or instrumentality of its parent Honeywell, and (2) Honeywell was a manufacturer or apparent manufacturer under Colorado law and Restatement (Second) of Torts § 400. Plaintiffs also argue that the trial court erred in dismissing plaintiffs' action against defendant Bull as barred by the statute of limitations.

I

Numerous plaintiffs, including the Yoders, originally filed suit in December 1992 in the Eastern District of New York against Honeywell and other computer keyboard manufacturers. In April 1994 that court severed the Yoder plaintiffs' case, as permitted by Fed. R. Civ. P. 21, and transferred it to the United States District Court for the District of Colorado. See 28 U.S.C. § 1404. Honeywell was the only defendant at that time.

Honeywell's first answer filed in January 1993 denied in general terms plaintiffs' allegations that Honeywell manufactured the keyboards at issue. In August 1994, shortly after the transfer of venue, in a scheduling/planning conference Honeywell more specifically made the identity of the manufacturer an issue. On December 7, 1994, Honeywell and plaintiffs jointly inspected the keyboards used at the reservation center where Regina Yoder had worked. Honeywell then formally notified plaintiffs on February 2, 1995, that Honeywell Information Systems Inc., a subsidiary of Honeywell now known as Bull HN Information Systems, Inc., manufactured the keyboards. Plaintiffs moved on March 5, 1995, to join as a party defendant Bull HN Information Systems, Inc., f/k/a/ Honeywell Bull, Inc. and f/k/a Honeywell Information Systems, Inc. The predecessors of Bull HN Information Systems, Inc. also include Incoterm Corporation; we refer to these entities collectively as Bull. In plaintiffs' amended complaint they alleged that Honeywell and/or Bull manufactured the keyboard equipment and asserted that Bull and its predecessors were alter egos or instrumentalities of Honeywell.

The district court granted Honeywell's motion for summary judgment. The court first found that Honeywell was not liable to plaintiffs as a manufacturer of the keyboards. Yoder v. Honeywell Inc., 900 F. Supp. 240, 242 (D. Colo. 1995). The district court noted that

> None of the . . . keyboards examined bore trademarks identifying the manufacturer on the front of the keyboard enclosures. Each of the seven

keyboards had labels bearing a trademark on the bottom of the keyboard enclosures. Three of the keyboards bore the trademark name Incoterm and four bore the Honeywell trademark. Based on [a former Honeywell employee's] examination of the keyboards he determined that the keyboards were not manufactured by Honeywell. Plaintiffs have made no showing that a genuine issue of fact exists that Honeywell manufactured, sold, or distributed any computer keyboard alleged to be defective.

Id. at 242 (citations omitted). The district court then declined to interpret Colorado products liability law to impose liability on a corporation that provides a trademark for a product under an "apparent manufacturer" theory. Id. at 246. The court also found that plaintiffs failed to establish that genuine issues of material fact remained whether to pierce Bull's corporate veil to hold the parent, Honeywell, liable. Finally, the district court granted Bull's motion to dismiss, finding that plaintiffs' claim was time-barred.

II

Plaintiffs first assert that summary judgment[1] in favor of Honeywell was improper. We review an order granting summary judgment de novo. Farthing v. City of Shawnee, Kan., 39 F.3d 1131, 1134 (10th Cir. 1994).

Because this is a diversity action, we first determine which state law to apply. The choice of law is determined by the conflict of laws rules of the forum state. Klaxon Co.

---

[1] Plaintiffs assert further error because a court order delayed discovery against Bull, and Honeywell failed to fully respond to plaintiffs' discovery. However, plaintiffs failed to file an affidavit, as provided by Fed. R. Civ. P. 56(f), explaining why they could not present facts to oppose the summary judgment motion. See Dreiling v. Peugeot Motors of Am., Inc., 850 F.2d 1373, 1376-77 (10th Cir. 1988). We thus assume plaintiffs had an ample opportunity to conduct discovery. Id. at 1377.

v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941).  The district court stated that Colorado law would apply as the law of the forum state, apparently overlooking that this case originated in the Eastern District of New York.  "The rule is settled that when a district court grants a venue change pursuant to 28 U.S.C. § 1404, the transferee court is obligated to apply the law of the state in which the transferor court sits."  Benne v. International Business Machines Corp., 87 F.3d 419, 423 (10th Cir. 1996) (citing Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) (rule applies whether defendant or plaintiff initiates change of venue)).  In this case, therefore, New York choice of law rules apply.

New York employs an "interest analysis" test, which requires application of the substantive law of the state which has the greatest interest in the litigation.  Schultz v. Boy Scouts of America, Inc., 480 N.E.2d 679, 684 (N.Y. 1985).  But before applying this test, New York courts determine whether an actual conflict in the substantive law exists.  Defendant Honeywell asserts that the specific substantive tort law of all states with a significant interest in this litigation--Colorado, Delaware and Minnesota[2]--require that plaintiffs prove a defendant was the manufacturer (or is liable as an apparent manufacturer) of the product.  Thus, defendants assert there is no conflict, and we should apply Colorado law on the tort liability claims.  If a potential conflict does exist,

---

[2] Delaware is the state of defendants' incorporation and Minnesota is the principal place of business of both defendants.  Of course New York as the original forum state has some interest.  But because none of these defendants or plaintiffs are domiciled there, the keyboards were not manufactured there, and the plaintiff did not use the keyboards there, the other three states' interests exceed that of New York.

Colorado, as plaintiffs' domiciliary and the place where Regina Yoder received the injury, would seem to have the greatest interest in the outcome, see Neumeier v. Kuehner, 286 N.E.2d 454, 458 (N.Y. 1972). But see Hadar v. Concordia Yacht Builders, Inc., 886 F. Supp. 1082, 1093-94 (S.D.N.Y. 1995) (state where product manufactured has large stake in governing liability of manufacturers in its territory). Therefore, we look to Colorado for the applicable substantive tort law.

Under New York choice of law principles, however, "the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." Fletcher v. Atex Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) (citations and quotations omitted). If we were to apply this rule the law of Delaware, the state of defendant Bull's incorporation, would apply to the corporate veil issue. Because the substantive tort law of Colorado applies here, however, we question whether New York would apply Delaware law to this related issue. In any event, our review of Delaware law indicates it is similar to Colorado, although Delaware may require somewhat more to pierce a corporate veil. Compare Geyer v. Ingersoll Publications Co., 621 A.2d 784, 793 (Del. Ch. 1992) (to pierce corporate veil of subsidiary plaintiff must show fraud or "that the parent and the subsidiary operated as a single economic entity" and "that an overall element of injustice or unfairness" is present) (quotations and citations omitted) with Lowell Staats Mining Co. v. Pioneer Uravan, Inc., 878 F.2d 1259, 1262 (10th Cir. 1989) (listing ten factors Colorado courts consider in determining

whether subsidiary is instrumentality of parent; also considering element of injustice).

Thus, we analyze the corporate veil issue under Colorado law.

A

Plaintiffs sought to pierce the corporate veil of Bull and hold its parent Honeywell

liable in tort because, they alleged, Bull was the alter ego or mere instrumentality of

Honeywell.  "[C]orporate veils exist for a reason and should be pierced only reluctantly

and cautiously.  The law permits the incorporation of businesses for the very purpose of

isolating liabilities among separate entities."  Boughton v. Cotter Corp., 65 F.3d 823, 836

(10th Cir. 1995) (quotations omitted) (applying Colorado law).

> When, however, the corporate structure is used so improperly that the
> continued recognition of the corporation as a separate legal entity would be
> unfair, the corporate entity may be disregarded and corporate principals
> held liable for the corporations's actions.  Thus, if it is shown that
> shareholders used the corporate entity as a mere instrumentality for the
> transaction of their own affairs without regard to separate and independent
> corporate existence, or for the purpose of defeating or evading important
> legislative policy, or in order to perpetrate a fraud or wrong on another,
> equity will permit the corporate form to be disregarded and will hold the
> shareholders personally responsible for the corporation's improper actions.

Micciche v. Billings, 727 P.2d 367, 372-73 (Colo. 1986) (citations omitted).

In Lowell Staats, we noted that under Colorado law whether a subsidiary is an

instrumentality of the parent is based on evaluating these elements:

> (1) The parent corporation owns all or majority of the capital stock of the
> subsidiary.  (2) The parent and subsidiary corporations have common
> directors or officers.  (3) The parent corporation finances the subsidiary.
> (4) The parent corporation subscribes to all the capital stock of the
> subsidiary or otherwise causes its incorporation.  (5) The subsidiary has

- 7 -

grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

Id. at 1262-63 (quoting Fish v. East, 114 F.2d 177, 191 (10th Cir. 1940)). Although the determination is primarily a question of fact, "a verdict as a matter of law may be justified where the facts, viewed most favorably to the party seeking to pierce the veil, do not justify such a result." Boughton, 65 F.3d at 836 n.22.

Plaintiffs argue that the district court improperly read our opinion in Lowell Staats as requiring plaintiffs to prove "that the corporate entity was used to defeat public convenience, or to justify or protect wrong, fraud or crime." Appellants' Brief at 8. Plaintiffs appear to contend that their alter ego argument is distinguishable from the more generic corporate veil case such as Lowell Staats. Plaintiffs cite Ward v. Cooper, 685 P.2d 1382 (Colo. App. 1984), for the proposition that even when a corporation has observed corporate formalities, and has not engaged in fraud, the Colorado courts will impose the alter ego doctrine. See also Friedman & Son, Inc. v. Safeway Stores, Inc., 712 P.2d 1128 (Colo. App. 1985); New Sheridan Hotel & Bar, Ltd. v. Commercial Leasing Corp., 645 P.2d 868 (Colo. App. 1982).

- 8 -

The brief opinion in <u>Ward</u> follows the analysis in <u>Lowell Staats</u> and <u>Fish</u>: In <u>Ward</u> the defendant and his wife owned most of the stock of the two corporations; they were officers and/or directors; the defendant dominated the corporations and used funds from one to benefit the other; and to escape personal liability defendant caused one of the corporations to repurchase his stock. <u>See</u> 685 P.2d at 1383-84. We acknowledge that courts have not always been clear in using the terms "alter ego," "mere instrumentality," and "piercing the corporate veil," <u>see</u> <u>Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.</u>, 456 F. Supp. 831, 839 (D. Del. 1978) (citing <u>Berkey v. Third Ave. Ry. Co.</u>, 155 N.E. 58, 61 (N.Y. 1926) (Cardozo, J.) (relationships between parent and subsidiary corporations enveloped in "mists of metaphor")). Under Colorado law, however, in order to hold a parent corporation liable for the torts of its subsidiary, a plaintiff must show that the corporate structure was used in such a way that "recognition of the separate corporate entity would result in injustice." <u>Lowell Staats</u>, 878 F.2d at 1262. This determination requires applying the ten factors in <u>Fish</u> and <u>Lowell Staats</u>. We now apply these factors, viewing the record in the light most favorable to plaintiffs.

First, as the district court noted, until 1987, Honeywell owned all of the stock of Bull's predecessor, Honeywell Information Systems Inc. (HIS). This fact alone is not enough to justify disregarding the corporate form. <u>See</u> <u>Industrial Comm'n v. Lavach</u>, 439 P.2d 359, 361 (Colo. 1968). Second, the three-member board of directors of HIS were all members of Honeywell's board of directors from 1970 until 1979; two members of

Honeywell's board continued as HIS directors until 1987. Identity of directors, however, "has been held to be innocuous where, as here, there is no evidence that through the board the parent controlled the subsidiary." Yoder, 900 F. Supp. at 244 (citing Quarles v. Fuqua Indus., Inc., 504 F.2d 1358, 1364 (10th Cir. 1974)). Concerning the third factor, whether the parent financed the subsidiary, the record reveals that Honeywell provided some type of financial assistance to HIS. Honeywell caused the incorporation of Bull's predecessor, HIS, thus establishing the fourth factor. Thus, plaintiffs arguably established the first four factors.

The remaining factors, however, favor Honeywell. The record reveals no evidence of gross undercapitalization, see Appellants' App. 246, 251 (1970 combined assets of Bull's predecessor, HIS, were $1.3 billion), or that Honeywell paid salaries or expenses for Bull. Less than five percent of Bull's business was with Honeywell. Plaintiffs did not show that Honeywell referred to Bull or its predecessors as a department or division, or that Bull's directors or executives took direction from Honeywell. Finally, defendants evidently observed the formal legal requirements of maintaining separate identities of the two corporations. Thus, there remain no fact questions with respect to the test whether Bull was an instrumentality or alter ego of Honeywell.

Additionally, we must consider that courts generally "are less likely to pierce a corporate veil when a consensual, contract-like transaction is involved than when a nonconsensual, tort-like transaction is involved," Cascade Energy & Metals Corp. v.

- 10 -

Banks, 896 F.2d 1557, 1577 (10th Cir.) (applying Utah law), cert. denied, 498 U.S. 849 (1990); "[o]f particular significance in most tort cases is whether the subsidiary is undercapitalized, because tort claimants usually have not voluntarily dealt with the subsidiary, and the question is whether a parent should be able to transfer a risk of loss or injury to members of the general public in the name of a subsidiary that may be marginally financed." Nelson v. International Paint Co., 734 F.2d 1084, 1092 (5th Cir. 1984) (applying Texas law). Even if Colorado courts would be more likely to pierce a corporate veil in a tort case, the facts of this case do not support doing so because Bull was adequately capitalized.

Finally, plaintiffs assert that the license agreement under which Honeywell allowed Bull to use its name is an important fact that proves an alter ego relationship. They point out that the agreement required Bull to comply with Honeywell's quality control standards and to make its products available for inspection by Honeywell. Plaintiffs argue the injustice of Honeywell benefiting from having its name on products manufactured by its subsidiary and then using Bull's corporate veil as a shield from liability.

We do not believe the licensing agreement here constituted the type of control Colorado courts consider in determining whether to hold a parent liable for actions of a subsidiary. The parent here did not allow an under-funded subsidiary to use its name, and then attempt to escape liability. Further, if Honeywell acted to keep plaintiffs from

discovering the true manufacturer, that would support a finding that Honeywell was using Bull to avoid liability and should be estopped from doing so. See Nelson, 734 F.2d at 1091 (refusing to apply estoppel based on facts of case). Our review of the record, however, reveals no such evidence. Viewing all the factors in this case as a whole, they "do not demonstrate that the corporate form 'was used to defeat public convenience, or to justify or protect wrong, fraud or crime.'" Boughton, 65 F.3d at 838. The possibility that plaintiffs may not be able to obtain a judgment against a subsidiary because they are barred by the statute of limitations is not the type of injustice that warrants piercing the corporate veil. See id. at 836 ("The possibility that the plaintiffs may have difficulty enforcing a judgment against [the subsidiary] alone is not the type of injustice that warrants piercing the corporate veil."). We thus uphold the district court's determination on this issue.

B

Plaintiffs next assert the district court erred in ruling that under Colorado law Honeywell was not a manufacturer of the keyboards. Plaintiffs primarily argue that Honeywell was liable as an "apparent manufacturer" under Restatement (Second) of Torts § 400 (1965) because it allowed its name to be used on products manufactured by one of its subsidiaries. "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Restatement

(Second) of Torts § 400.  "[O]ne puts out a chattel as his own product when he puts it out under his name or affixes to it his trade name or trademark."  Id. § 400 cmt. d.

We have found no Colorado cases addressing whether Colorado would apply or reject § 400.  In this situation, "we must attempt to construe the law of the State of Colorado in the manner in which the Supreme Court of Colorado would, if faced with the same facts and issue."  City of Aurora v. Bechtel Corp., 599 F.2d 382, 386 (10th Cir. 1979).  In addition to considering analogous Colorado law, we look also to other state and federal decisions and to the general trend of authority.  Id.

The Colorado Products Liability Act, and in particular Colo. Rev. Stat. § 13-21-401, imposes strict liability for defective products on a "manufacturer" of the product.  The statute defines manufacturer as

> [A] person or entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product prior to the sale of the product to a user or consumer.  The term includes any seller who has actual knowledge of a defect in a product or a seller of a product who creates and furnishes a manufacturer with specifications relevant to the alleged defect for producing the product or who otherwise exercises some significant control over all or a portion of the manufacturing process or who alters or modifies a product in any significant manner after the product comes into his possession and before it is sold to the ultimate user or consumer.  The term also includes any seller of a product who is owned in whole or significant part by the manufacturer or who owns, in whole or significant part, the manufacturer.  A seller not otherwise a manufacturer shall not be deemed to be a manufacturer merely because he places or has placed a private label on a product if he did not otherwise specify how the product shall be produced or controlled, in some significant manner, the manufacturing process of the product and the seller discloses who the actual manufacturer is.

Colo. Rev. Stat. § 13-21-401 (emphasis added). Although this statute does not expressly adopt Restatement (Second) § 400, the last sentence of the statutory definition of manufacturer is similar to § 400. By negative implication the statute allows a seller who places a private label on a product without disclosing the actual manufacturer to be held liable as a manufacturer.

Assuming Colorado has adopted the essence of Restatement § 400 there is a further obstacle for plaintiffs. Honeywell was not a seller or distributor of the keyboards at issue here. Many courts have declined to extend § 400 beyond sellers and retailers of defective products. See, e.g., Fletcher v. Atex, Inc., 68 F.3d 1451, 1463 (2d Cir. 1995) (upholding summary judgment on apparent manufacturer claim where defendant was not seller of product or otherwise involved in chain of distribution); Torres v. Goodyear Tire & Rubber Co., 867 F.2d 1234, 1236 (9th Cir. 1989) (defective tire bore defendant's name but court refused to impose liability because defendant did not manufacture or sell tire); Affiliated FM Ins. Co. v. Trane Co., 831 F.2d 153, 155-56 (7th Cir. 1987) (disallowing liability for product designer who did not sell, manufacture or install product); Nelson v. International Paint Co., Inc., 734 F.2d 1084 (5th Cir. 1984) (court would not impose liability on parent under Restatement (Second) § 400 even though product bore its name because parent was not involved in distribution); Hebel v. Sherman Equip., 442 N.E.2d 199, 202-03 (Ill. 1982) (stating that apparent manufacturer doctrine was designed to apply to sellers and court found only two cases applying it to nonsellers).

Plaintiffs point out that some courts have extended strict liability under the § 400 apparent manufacturer doctrine to an owner of a trademark not otherwise involved in the chain of distribution. See, e.g., Brandimarti v. Caterpillar Tractor Co., 527 A.2d 134 (Pa. 1987) (although Caterpillar did not participate in distribution, it could be strictly liable for defective product because it allowed its name to be placed on equipment); Connelly v. Uniroyal, Inc., 389 N.E.2d 155 (Ill. 1979) (licensor whose trademark was on an allegedly defective tire could be strictly liable for injury even though defendant not "a link in the chain of distribution"), appeal dismissed, cert. denied, 444 U.S. 1060 (1980).

Plaintiffs also assert that Honeywell is liable as a manufacturer because under Colo. Rev. Stat. § 13-21-401 a manufacturer includes someone who "otherwise prepares a product" before its sale, and that Honeywell "prepared" some of the keyboards by designing and copyrighting a circuit board and allowing its name to appear on the keyboard. See Appellants' Brief at 30-31. We have reviewed the record and find no support in it for plaintiffs' assertion that Honeywell designed and copyrighted the printed circuit board. Further, the plain meaning of the phrase "otherwise prepares a product" does not encompass use of one's name on that product.

After considering the overwhelming majority of the opinions rejecting application of apparent manufacturer liability to a trademark owner not in the chain of distribution, the Illinois Supreme Court decision in Hebel distinguishing its earlier Connelly decision,

and the wording of the Colorado statute, we agree with the district court that the Colorado Supreme Court likely would not impose liability on Honeywell under an apparent manufacturer theory. The district court did not err in concluding that no genuine issue of material fact remained whether Honeywell could be liable as a manufacturer or apparent manufacturer under Colorado law.

## III

Finally, plaintiffs assert that the district court erred in granting Bull's motion to dismiss for failure to state a claim because the action was time-barred under Colorado law. We review de novo a district court's grant of a motion to dismiss for failure to state a claim. Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 854 (10th Cir. 1996).

> We uphold a dismissal under Fed. R. Civ. P. 12(b)(6) only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff.

Fuller v. Norton, 86 F.3d 1016, 1020 (10th Cir. 1996).

The district court applied the Colorado statute of limitations. Although the parties did not dispute this issue at the district court or on appeal, a choice of law question exists.

We recently addressed the question in Benne v. International Business Machines Corp., 87 F.3d 419 (10th Cir. 1996). That was a repetitive stress injury action against keyboard manufacturers filed in the United States District Court for the Eastern District of New York apparently at about the same time as was the instant case. That court

transferred the case to the District of Kansas, which granted the manufacturer's motion for summary judgment. We held that the law of New York, the state in which the transferor court sat, governed the statute of limitations. We thus applied the New York borrowing statute which provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

Benne, 87 F.3d at 425. See N.Y. Civ. Prac. Law § 202 (McKinney, 1990). Benne controls here; plaintiffs' claims "must have been timely under both the limitations periods of New York [and the transferee state]."[3] Benne, 87 F.3d at 425.

---

[3] In Benne, plaintiffs argued that defendants, by arguing for application of the substantive laws of the transferee state, had waived application of the transferor state's statute of limitations. See 87 F.3d at 423-25. We rejected this argument in part because defendant had argued that under the choice of laws rules of the transferor state, the laws of the transferee state would control. Id. at 425. That was not the case here, where the parties and court all assumed Colorado law applied. But in Benne we also found no waiver because "the transferee court has the obligation to apply the law of the transferor state." Id. We noted that in a venue transfer case

> if a defendant, either by fraud, deceit, or misrepresentation, prevented plaintiff from filing a timely claim in the transferor state, then estoppel or waiver of the statute of limitations is possible. Further, a defendant may always choose not to plead the defense of the statute of limitations, in which case, the limitations period would not become an issue. Note, however, that this would be a matter strictly involving the application of the law of the transferor state, not a matter of the defendant's actions causing the court to resort to the statute of limitations of the transferee state.

Id. We hold that defendant Bull did not waive the statute of limitations defense simply by

(continued...)

In New York an action to recover damages for personal injuries must be commenced within three years from the date the cause of action accrues. "Unlike the [transferee state's] limitations statute, the New York limitations period commences on the date of injury." Id. at 427 (citing N.Y. Civ. Prac. Law § 214 (McKinney 1990)) (emphasis added); Snyder v. Town Insulation, Inc., 615 N.E.2d 999, 1000-01 (N.Y. 1993). Under New York law "[t]he injury itself, rather than the negligent act by defendant or the discovery of the wrong by plaintiff, marks the date of accrual." Benne, 87 F.3d at 427 (citing Piper v. IBM, 639 N.Y.S.2d 623 (1996) (other citations omitted)); see also Thorn v. IBM, Inc., 1996 WL 673372 (8th Cir. Nov. 22, 1996) (federal and New York courts have held that the New York "discovery rule" for injuries caused by latent effects of exposure to substances, N.Y. Civ. Prac. Law 214-c(2) (McKinney 1990), does not apply to repetitive stress injury). Further, New York courts have held that the limitations period begins to run in a repetitive stress injury when the plaintiff first experienced symptoms of carpal tunnel syndrome rather than when the symptoms developed into a diagnosable condition. Piper, 639 N.Y.S.2d at 623; see also Thorn at *3-4.

The face of plaintiffs' first amended complaint states that she began to suffer symptoms of numbness, tingling and other impairments about May 1990, and by

_____

[3](...continued)
pleading the defense based on the wrong choice of law. Cf. Daingerfield Island Protective Soc. v. Babbitt, 40 F.3d 442, 444-45 (D.C. Cir. 1994) (limitations defense sufficiently raised for Fed. R. Civ. P. 8, by bare assertion).

December 1990 she had been diagnosed with several conditions including bilateral radial tunnel syndrome and had undergone corrective surgery. Therefore, under New York law, plaintiffs' cause of action accrued in May 1990 (and certainly no later than her December 1990 surgery for the repetitive stress injury). Plaintiffs' addition of Bull as a defendant in March 1995, more than three years after the cause of action accrued, was untimely.

Because the district court and the parties did not address the New York statute of limitations, we have reviewed New York law to determine whether plaintiffs might have a basis to argue the date of accrual should be later than indicated by normal accrual rules, or that defendant Bull might be estopped from pleading the statute of limitations. We see no justification for applying alternative accrual rules. See Holdridge v. Heyer-Schulte Corp., 440 F. Supp. 1088, 1095-98 (N.D.N.Y. 1977) (discussing theories of continuous torts, foreign object discovery rule, and continuous treatment doctrine). Further, there is no basis on which the defendants could be held estopped from raising the statute of limitations. See id. at 1104-05. We hold that the district court correctly dismissed the suit against Bull as untimely.

We are mindful that plaintiffs now have no remedy. But if plaintiffs had examined the keyboards before bringing suit they would have noted that although the name "-Honeywell" appeared on some, "Incoterm" or "Honeywell Systems Inc." also appeared on all but two of the keyboards, and those two referred to the same Puerto Rican place of

manufacture as was on the keyboards containing Honeywell Systems Inc.'s name. Prudence would dictate that plaintiffs promptly investigate each of these entities as possible defendants.

AFFIRMED.