**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 9 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JACK I. PRYOR,

    Plaintiff-Appellant,

v.

ANDREW M. COATS, as an
individual, and as the Dean of the
University of Oklahoma College
of Law,

    Defendant-Appellee.

No. 99-6271
(D.C. No. CIV-99-17-R)
(W.D. Okla.)

ORDER AND JUDGMENT  *

Before **EBEL** , **KELLY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Jack I. Pryor appeals the district court's order granting defendant Andrew M. Coats' motion to dismiss plaintiff's 42 U.S.C. § 1983 complaint alleging First Amendment and Establishment Clause violations. The court determined that defendant was entitled to qualified immunity with respect to plaintiff's claims. Plaintiff appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. Background

The Oklahoma University College of Law has a policy which provides that each registered student group is entitled to have a bulletin board in the law school for its exclusive use and under its exclusive control. In order to qualify as a registered student group, a group must file an application stating the names, signatures, and student identification numbers of at least ten students who are members of the group. The application also must include the name of a faculty advisor and a copy of the group's constitution. Each registered student group is then assigned a bulletin board identified by the name of the group. The assigned group has exclusive control over what information is posted on its bulletin board. The Christian Legal Society, a registered student group at the law school, has access to a bulletin board.

While a first-year law student, plaintiff complained to defendant regarding this policy, requesting that bulletin boards be made available to all students. He alleged that the policy of restricting bulletin board availability to registered student groups was discriminatory in favor of Christianity and was an improper entanglement of the university in the advancement of religion. Two years later, he made the same complaint to the university, demanding his right to post writings on a bulletin board. His demand was refused.

Plaintiff then brought this § 1983 action against defendant seeking injunctive and declaratory relief and nominal damages. In his original complaint, plaintiff alleged that defendant's policy of restricting law school bulletin board use to registered student groups violated his rights to free speech and free association under the First Amendment. Plaintiff also alleged that allowing the Christian Legal Society, a registered student group, exclusive use of a bulletin board and allowing faculty members to post information and announcements on this bulletin board violated the Free Exercise and Establishment Clauses of the First Amendment.

Defendant moved to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6), alleging that (1) plaintiff failed to state a cognizable claim, (2) defendant was entitled to qualified immunity from plaintiff's claims, (3) plaintiff's claims were outside the applicable statute of limitations, and

(4) portions of plaintiff's claims were barred by the Eleventh Amendment. In responding, plaintiff filed an amended complaint removing his requests for injunctive and declaratory relief, clarifying his intent to seek relief under § 1983, and abandoning his allegation that defendant violated his right to free association. Defendant again moved to dismiss, alleging that plaintiff's claims were time barred and that defendant was entitled to qualified immunity.

In its order granting defendant's motion to dismiss, the district court found that one of plaintiff's claims was time-barred and that defendant was entitled to qualified immunity on plaintiff's remaining claims. Plaintiff appeals the district court's determination that defendant was entitled to qualified immunity from his free speech claim and from his claim that defendant's policy for use of the bulletin boards violates the Establishment Clause. [1]

---

[1] We agree with defendant that plaintiff has abandoned on appeal his contention alleging the district court incorrectly found plaintiff's claim that a faculty member's alleged use of class time to encourage students to participate in the Christian Legal Society was outside the applicable statute of limitations. As defendant points out, *see* Appellee's Br. at 3 n.1, even though plaintiff mentions this allegation in his opening brief, he fails to properly develop or address this claim. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (holding that perfunctory complaints which fail to frame and develop an issue are insufficient to invoke appellate review).

## II. Discussion

### A. Standard of Review

We review the sufficiency of a complaint to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief may be granted de novo. *See Bauchman ex rel. Bauchman v. West High Sch.*, 132 F.3d 542, 550 (10th Cir. 1997). Accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff, the district court may appropriately dismiss a complaint only when it appears that plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997). The standard is slightly different when the basis for the court's dismissal is qualified immunity. *See Breidenbach v. Bolish*, 126 F.3d 1288, 1291 (10th Cir. 1997). Once the qualified immunity defense is raised, plaintiff must demonstrate "both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." *Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994) (quotation omitted).

"Qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Baptiste v. J.C. Penney Co.*, 147 F.3d

1252, 1255 (10th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Because here defendant's qualified immunity defense was raised in the context of a Rule 12(b)(6) motion to dismiss, our review is limited to the pleadings, construing plaintiff's allegations in his amended complaint and any reasonable inferences drawn therefrom in his favor.  *See Dill v. City of Edmond*, 155 F.3d 1193, 1203 (10th Cir. 1998).  "[W]e apply a heightened pleading standard, requiring the complaint to contain 'specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law.'"  *Id.* at 1204 (quoting *Breidenbach*, 126 F.3d at 1293).

In rejecting plaintiff's constitutional claims, the district court relied on the Supreme Court's approach in *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998), holding that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Accord Jurasek v. Utah State Hosp.*, 158 F.3d 506, 516 (10th Cir. 1998).  If the court finds that plaintiff's constitutional rights have not been abridged or violated, the court need not address whether the law was firmly established.  *See id.*  Applying this guide, the district court determined that plaintiff failed to allege a deprivation of his constitutional rights.  We likewise adopt this approach here.

## B. First Amendment Claim

"The First Amendment, as applied to state and local governments through the Fourteenth Amendment, provides that state actors 'shall make no law . . . abridging the freedom of speech.'" *Hawkins v. City & County of Denver*, 170 F.3d 1281, 1286 (10th Cir.) (quoting U.S. Const. amend. I), *cert. denied*, 120 S. Ct. 172 (1999). This First Amendment protection also applies to policies less formal than the legislative process such as the law school's bulletin board policy at issue here. *See id.*

Initially, plaintiff argues that the district court erred in not finding the law school's bulletin boards to be a designated public forum subject to a strict scrutiny standard for deciding his claim of unconstitutional exclusion. "The government's ability to restrict protected speech by private persons on government property depends, in part, on the nature of the forum." *Church on the Rock v. City of Albuquerque*, 84 F.3d 1273, 1278 (10th Cir. 1996). The Supreme Court has identified three types of fora: "(1) traditional public fora; (2) designated public fora; and (3) nonpublic fora." *Hawkins*, 170 F.3d at 1286.

Traditional public fora are those places, such as streets, sidewalks, and parks, where assembly, debate, and communication are most often observed. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983); *Summum v. Callaghan*, 130 F.3d 906, 914 n.11 (10th Cir. 1997). Content-neutral

restrictions on speech activities in a traditional public forum are subject to heightened scrutiny, requiring the government to show that the regulation is "'narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Summmum*, 130 F.3d at 914 n.11 (quoting *Perry Educ. Ass'n*, 460 U.S. at 45).

"A designated public forum is property the government has opened for expressive activity, treating the property as if it were a traditional public forum." *Id.* at 914. The government can limit a designated public forum for use "by certain groups, or for the discussion of certain subjects." *Perry Educ. Ass'n*, 460 U.S. at 45-46 & n.7. Speech activity restrictions on designated public fora are also subject to the strict scrutiny standard of review, requiring content-based restrictions to "be narrowly drawn to effectuate a compelling state interest" and allowing "reasonable time, place, and manner regulations." *Summmum*, 130 F.3d at 914; *see also Perry Educ. Ass'n*, 460 U.S. at 46.

In *Widmar v. Vincent*, 454 U.S. 263, 270 (1981), the Court applied strict scrutiny to its consideration of a free speech and Establishment Clause challenge alleging that a state university had violated constitutional rights by making its facilities available to registered student groups while denying use of its facilities to a religious student group. The Court held that in allowing registered student groups access to its facilities, the university had created a type of limited public

forum, requiring the university "to justify its discriminations and exclusions under applicable constitutional norms." *Id.* at 267. In later cases, however, the Supreme Court coined the phrase "limited public forum" to denote a kind of nonpublic forum and has abandoned the strict scrutiny test in favor of a reasonableness standard, requiring that the state show that its restrictions are reasonable in light of the purpose of the forum and that the restrictions are viewpoint neutral. *See Summum*, 130 F.3d at 915 (citing *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995) and *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993)).

In *Rosenberger*, the Court, applying the reasonableness test, held that in allowing a wide spectrum of student groups access to the student activity fund, the university had created a limited public forum which could not exclude a Christian student newspaper from access to the fund. *See* 515 U.S. at 829-30. Similarly, in *Lamb's Chapel*, the Court, again applying the reasonableness test, determined that defendant had created a limited public forum by allowing use of its property by a number of private groups, 508 U.S. at 392-93, and therefore could not deny the same access to a church desiring to show a film on school property, *id.* at 393-94. In accordance, in *Summum*, this court used the term "'limited public forum' . . . to denote a particular species of nonpublic forum, in accordance with the manner in which [the plaintiff], the Supreme Court in

-9-

*Rosenberger* and *Lamb's Chapel*, and some commentators define that term."
130 F.3d at 916 n.14.

Because the situation here falls squarely within the parameters of *Rosenberger* and *Lamb's Chapel*, we conclude that the law school's restrictions regarding providing bulletin boards for registered student groups created a limited public forum subject to the more deferential reasonableness standard. Therefore, the district court's application of this standard to plaintiff's arguments was not error.

Next, plaintiff asserts that he was unconstitutionally excluded from the class for whom the designated forum of bulletin boards was created. Plaintiff cites us to *Arkansas Educational Televison Commission v. Forbes*, 523 U.S. 666 (1998), in support of his contention that because the law school's bulletin boards are a designated public forum, and because he is similarly situated to registered student groups, his exclusion from use of a bulletin board is subject to strict scrutiny analysis.

In light of our previous determination that the law school's bulletin boards are not a designated public forum, we need not repeat here our reasoning in rejecting plaintiff's assertion regarding a strict scrutiny standard. We do note, however, that contrary to plaintiff's argument, our reading of *Forbes* not only

belies his assertion, but, in fact and substance, lends further support to our rationale.

In *Forbes*, the Supreme Court considered a First Amendment challenge by a presidential candidate, alleging unconstitutional denial of participation in a televised political debate. The *Forbes* Court held that because the debate was a nonpublic forum, the broadcaster's exclusion of plaintiff was a "reasonable, viewpoint-neutral exercise of its journalistic discretion." 523 U.S. at 683. In offering some clarification as to what differentiates a designated public forum and a limited public forum, the Court opined that "general access" indicates a designated public forum, while "selective access" indicates a nonpublic forum. *Id.* at 679 (quotation omitted). "Designated public fora, . . . are created by purposeful governmental action . . . by intentionally opening a nontraditional public forum for public discourse." *Id.* at 677 (quotation omitted). The Court further stated that "the government does not create a designated public forum when it does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, obtain permission to use it." *Id.* at 679 (quotation omitted).

Here, it is clear that the university law school did not intend to create a designated public forum when it made bulletin boards available only to registered student groups. *See Cornelius v. NAACP Legal Defense & Educ. Fund,*

*Inc.*, 473 U.S. 788, 802-03 (1985) (distinguishing *Widmar* where university policy contained a clear intent to create a public forum). Moreover, each student group must meet definitive requirements, or in effect obtain permission, before being allowed access to a bulletin board. *See id.* at 803. Plaintiff, despite his contention that he should be recognized as a "student group having a membership of one," Appellant's Br. at 11, does not meet the law school's requirements. "[I]f faced with an all-or-nothing choice," as plaintiff demands, the law school may choose not to open the bulletin boards for use at all. *Forbes*, 523 U.S. at 681 ("Were it faced with the prospect of cacophony, on the one hand, and the First Amendment liability, on the other, a public television broadcaster might choose not to air candidates' views at all.").

Plaintiff alleges that the law school's policy constitutes viewpoint discrimination in that only popular viewpoints--those having support of ten or more persons--are allowed access to a bulletin board. In rejecting a similar argument in *Forbes* in which the plaintiff argued that he was excluded from the debate "because his views were unpopular or out of the mainstream," the Court held that the plaintiff's "own objective lack of support, not his platform, was the criterion." *Id.* at 683. This is equally true here. There is no evidence that plaintiff was denied access to a bulletin board because the law school sought to suppress his viewpoint. The law school obviously established its criteria for

-12-

recognition as a registered student group in order to avoid the kind of "cacophony" that plaintiff's demands would create, a change that could lead to abandonment of the policy entirely. *See id.* at 641; *see also Cornelius*, 473 U.S. at 804 ("In cases where the principal function of the property would be disrupted by expressive activity, the Court is particularly reluctant to hold that the government intended to designate a public forum.").

Relying on *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988), plaintiff asserts that the law school's bulletin board policy is facially unconstitutional because the defendant has "unfettered discretion" to make the rules that determine which students may have access to the bulletin boards. We adopt the district court's rationale for rejecting this specious argument. The district court found plaintiff's argument unpersuasive, stating

> [T]he University, not Defendant, sets the requirements for RSGs and determines independently what groups attain RSG status based wholly on objective criteria unrelated to any viewpoints held or espoused by such RSGs, and there is no allegation herein that Defendant has excluded some RSGs from the bulletin boards and/or that the University has denied RSG status to any group that meets the objective requirements for that status.

Dist. Ct. Order at 18.

Once again plaintiff attempts to support his argument with authority that is inapposite. In *City of Lakewood*, the Court upheld the plaintiff's challenge alleging that the city's licensing process for newsstands was facially

unconstitutional. In so doing, the Court concluded that "a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." 486 U.S. at 757. The Court based its conclusion on the "absence of express standards" in the city's licensing process, depriving the court of "guideposts" which allow a quick and easy avenue for determining whether the licensor is discriminating based on disfavored speech. *Id.* at 758.

Contrary to plaintiff's contention, the law school's process for registering student groups does not suffer from the same "absence of express standards." *Id.* It is clear that the criteria applied by the law school when sanctioning student groups for bulletin board access are reasonable, objective, and without any overt or covert hint of discriminatory intent. Plaintiff's allegation that, because of the "Christian atmosphere of the Law School," ten students would be loathe to risk "the enmity of faculty, administrators, and a clique of organized, officially encouraged Christian students," in order to form a student group of non-Christians is totally lacking in factual support. Appellant's Br. at 16.

Consequently, we conclude that the law school's policy governing access to law school bulletin boards is a reasonable, viewpoint-neutral exercise of its right to limit such access. Plaintiff's First Amendment right to free speech has

-14-

not been compromised or offended, and therefore, the district court's grant of qualified immunity to defendant on this issue was appropriate.

## C. Establishment Clause Claim

The Establishment Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. "At its core, the Establishment Clause enshrines the principle that government may not act in ways that 'aid one religion, aid all religions, or prefer one religion over another.'" *Snyder v. Murray City Corp.*, 159 F.3d 1227, 1230 (10th Cir. 1998) (quoting *Lee v. Weisman*, 505 U.S. 577, 600 (1992) (Blackmun, J., concurring)), *cert. denied*, 119 S. Ct. 1334 (1999).

In *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the Supreme Court established a three-part test for determining whether government action offends the Establishment Clause. According to the *Lemon* test, government action does not offend the Establishment Clause if it (1) has a secular purpose; (2) does not have the principal or primary effect of advancing or inhibiting religion, and (3) does not foster an excessive entanglement with religion. *See id.* at 612-13. In a concurring opinion in a later decision, Justice O'Connor attempted to clarify the *Lemon* test, opining that "the government impermissibly endorses religion if its conduct has either (1) the purpose or (2) the effect of conveying a message that religion or a particular religious belief is favored or preferred." *Bauchman ex rel.*

-15-

*Bauchman v. West High Sch.*, 132 F.3d 542, 551 (10th Cir. 1997) (summarizing *Lynch v. Donnelly*, 465 U.S. 668, 687-94 (1984) (O'Connor, J., concurring)) (further quotation omitted). In order to avoid "the uncertainty surrounding" the scope of the appropriate Establishment Clause analysis, in *Bauchman*, this court concluded that in order "[t]o survive a motion to dismiss, [plaintiff] must allege facts which, accepted as true, suggest a violation of any part of [the *Lemon* and *Lynch*] analysis." *Id.* at 552-53.

"We should resist attributing unconstitutional motives to the government, particularly where we discern a plausible secular purpose." *Id.* at 554. Here defendant defined its secular purposes for its bulletin board policy as encouraging student participation in extracurricular activities, promoting free expression, promoting learning, and providing a forum for an exchange of ideas. Rather than arguing that the law school has no secular purpose in allowing registered student groups access to bulletin boards, plaintiff here urges the court to conclude that, in spite of its stated legitimate secular purpose, its real purpose is to endorse the Christian religion. *See id.* at 554. As we observed in *Bauchman*, if we gave credence to this claim, we would be impermissibly allowing plaintiff to support his claim by focusing exclusively on the Christian Legal Society's access to a bulletin board. *See id.* (noting that focusing solely on religious component of activity "would inevitably lead to invalidation of the activity" contrary to the

necessity for deferential and limited inquiry into government's purpose). The Supreme Court's requirement that government action serve a secular purpose, "does not mean that the [policy's] purpose must be unrelated to religion." *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 335 (1987).

"For a law to have forbidden 'effects under *Lemon*, it must be fair to say that the government itself has advanced religion through its own activities or influence." *Id.* at 337. Plaintiff alleges that the existence of the names of certain faculty members on the Christian Legal Society bulletin board lent "prestige and authority" to the group, conveyed "a message of official endorsement," and created an impermissible entanglement between the Christian Legal Society and the state university law school. Appellant's Br. at 23-24. In rejecting this argument, the district court concluded that plaintiff had not shown that "Defendant knew of, much less encouraged, professors or an associate dean's affiliation with the SCLS or their use of the SCLS bulletin board." Dist. Ct. Order at 28. Plaintiff argues on appeal that this "is another example of the trial court's choosing not to draw reasonable inferences from [plaintiff's] averments of fact." Appellant's Br. at 25-26. We discern no problem with the district court's reluctance to draw any inferences from plaintiff's speculative allegation

-17-

that the Christian Legal Society's bulletin board "may be a sham and that the views expressed there may not be the views of students at all." *Id.* at 25.

"It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Lee*, 505 U.S. at 587 (quoting *Lynch*, 465 U.S. at 678). Having a bulletin board containing religious messages in a place where plaintiff has to pass it in order to move about the law school falls far short of coercing him into supporting and participating in religion. Plaintiff's allegations that the bulletin board sends a message to students that if they do not participate in the Christian Legal Society, their law school performance will somehow be penalized or compromised is nothing more than further conjecture. He offers no instance where a student has received unfavorable treatment in his law school classes due to his failure to participate in the Christian Legal Society.

The Constitution does not require a complete absence of religious expression in public institutions. In fact "it affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility toward any." *Lynch*, 465 U.S. at 673. Applying the tests articulated in both *Lemon* and *Lynch*, *see Bauchman*, 132 F.3d at 552-53, we conclude that the law school's bulletin board policy would no more have the effect of endorsing

-18-

religion or unconstitutionally entangling the law school in religious conduct than it would have the effect of committing the law school to the beliefs and goals of any other registered student group given bulletin board access. As the Supreme Court has noted, a religious organization's enjoyment of merely "incidental" benefits does not necessarily violate the Establishment Clause. *Committee for Public Educ. v. Nyquist*, 413 U.S. 756, 771 (1973).

### III. Conclusion

Accepting plaintiff's well-pleaded facts as true and construing them in his favor, plaintiff has not alleged facts, which if proven, would entitle him to relief. *See Dill*, 155 F.3d at 1203. Plaintiff has not persuaded us that defendant's bulletin board policy violated his First Amendment right of free speech or that the policy unconstitutionally respects an establishment of religion, and therefore, the district court's grant of qualified immunity to defendant was correct. Having determined that plaintiff failed to assert a violation of a constitutional right, we need not determine whether the law was clearly established. *See Jurasek*, 158 F.3d at 516.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge