PUBLISH

UNITED STATES COURT OF APPEALS

TENACH CIRCUIT

**Filed 6/20/96**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

CATHERINE ANN BENNE,                  )
                                      )
    Plaintiff-Appellant,              )
                                      )          No. 95-3026
    v.                                )
                                      )
INTERNATIONAL BUSINESS MACHINES       )
CORP. and GATEWAY 2000, INC.,         )
                                      )
    Defendants-Appellees.             )

_____

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 94-1181-PFK)

_____

Kenneth E. Meiser of Szaferman, Lakind, Blumstein, Watter & Blader,
P.C., Lawrenceville, New Jersey (Arnold C. Lakind of Szaferman,
Lakind, Blumstein, Watter & Blader, P.C., Lawrenceville, New
Jersey, Albert L. Kamas of Render, Kamas & Hammond, Wichita, Kansas
with him on the brief) for Plaintiff-Appellant.

Gerald Sawatzky of Foulston & Seifkin, Wichita, Kansas (Trisha A.
Thelen and Jeff P. DeGraffenreid of Foulston & Seifkin, Wichita,
Kansas, James F. Duncan, Katherine J. Rodgers and Kristine S. Focht
of Watson & Marshall, L.C., Kansas City, Missouri, Josesph A.
D'Avanzo and Maria J. Morreale of Cerussi and Spring, White Plains,
New York with him on the brief) for Defendants-Appellees.

_____

Before ANDERSON, McKAY, and JONES,[*] Circuit Judges.

_____

JONES, Circuit Judge.

_____

_____

[*]Honorable Nathaniel R. Jones, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by
designation.

Plaintiff Catherine Benne appeals the entry of summary judgment for Defendants International Business Machines (IBM) and Gateway 2000 (Gateway) in her diversity personal injury action. Concluding that Benne had filed her claims past the period allowed by the appropriate state statutes of limitations, the district court granted summary judgment for Defendants. For the following reasons we affirm the judgment of the district court.

## I.

From 1979 to 1992, Benne was employed in Kansas as a secretary and x-ray technician for an orthopaedic physician, Dr. Ernest Schlachter. Between fifty and sixty percent of Benne's time was spent typing on either an IBM typewriter keyboard or a Gateway computer keyboard. As a result of typing extensively over this thirteen year period on keyboards manufactured by IBM and Gateway, Benne developed carpal tunnel syndrome and overuse syndrome.

In 1984 Benne developed numbness, tingling, and swelling in her hands. Dr. Schlachter examined Benne and referred her to a specialist. Dr. Schlachter subsequently filed a report with the Kansas Division of Workers' Compensation that indicated he was retaining Benne as an employee despite knowing that she suffered from "overuse syndrome of both arms." Appendix at 157. In 1985, Schlachter filed an Employer's Report of Accident with the Kansas Division of Workers' Compensation in which he indicated that Benne had been injured at work. *Id.* at 155-56. Schlachter described the injury as "bilateral carpal tunnel tendonitis and left entrapment

2

neuropathy at the elbow of the ulnar nerve." *Id.* at 156. The report cited the cause of the accident as "repetitive use typing, filing, and other office work." *Id.* at 385. Benne typed this report and therefore knew of its contents.

Benne's symptoms intensified in 1987. Dr. Schlachter confirmed that the aggravation of Benne's condition was caused by an increase in Benne's typing responsibilities. On November 9, 1988, the Workers' Compensation Fund was ordered to pay Benne because Dr. Schlachter had knowingly retained a handicapped employee and, but for her prior injuries, Benne would not have suffered permanent impairment.

Benne alleges that the nature of her injuries changed in 1989. As part of a motion for reconsideration of the district court's ruling on summary judgment, Dr. Schlachter submitted an affidavit claiming that Benne sustained new and qualitatively different injuries on and after December 18, 1989. His conclusions were based on "new and qualitatively different symptoms from those [Benne] had complained of on or prior to December 18, 1989." Appendix at 385.

In 1992, Benne and thirteen other plaintiffs filed tort actions against IBM and Gateway in the Eastern District of New York. Benne asserted negligence and products liability claims, alleging that negligence in the design of Defendants' keyboards caused her repetitive stress injuries. Benne's case was consolidated with other repetitive stress injury cases. *See In re Repetitive Stress Injury Cases*, 142 F.R.D. 584 (E.D.N.Y. 1992).

3

Subsequently, the Second Circuit reversed the district court and deconsolidated the cases. *In re Repetitive Stress Injury Litigation*, 11 F.3d 368 (2d Cir. 1993). After the deconsolidation order, Defendants moved to transfer Benne's case to the District of Kansas, where the injuries arose. The district court granted the motion and the case was transferred.

Defendants moved for summary judgment on the theory that Benne's action was barred by the New York statute of limitations. Applying the conflicts of law principles of New York, the transferor state, the district court determined that to be timely, Benne must have brought her claim in time to satisfy both the New York and Kansas statutes of limitations. The district court then found that Benne's action was brought outside of the time limit permitted by either state's statute. Accordingly, the district court entered summary judgment for Defendants. Benne filed a motion for reconsideration based upon the submission of new affidavits. The district court denied the motion.

Benne now appeals, raising the following issues regarding the district court's grant of summary judgment: (1) whether the district court erred by applying the New York conflicts of law statute; (2) whether the district court erred in finding that Benne's action was time barred by the Kansas statute of limitations; and (3) whether the district court erred in finding that Benne's action was time barred by the New York statute of limitations. Benne also appeals the denial of her motion for reconsideration, alleging that the district court abused its

4

discretion.

## II.

We review the entry of summary judgment *de novo*, applying the same standard used by the district court. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1996). Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hosp. of Independence, Kansas*, 854 F.2d 365, 367 (10th Cir. 1988).

## A.

We first resolve whether the district court properly used the New York statute of limitations, the transferor state, and whether Defendants waived the New York statute of limitations as a defense to Benne's claims.

Pursuant to Defendants' request, the district court granted a change of venue from the Eastern District of New York to the District of Kansas. *See* 28 U.S.C. § 1404. The rule is settled that when a district court grants a venue change pursuant to 28 U.S.C. § 1404, the transferee court is *obligated* to apply the law of the state in which the transferor court sits. *Van Dusen v.*

*Barrack*, 376 U.S. 612, 639 (1964); *see also Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990). This rule applies whether the plaintiff or the defendant initiates the change in venue. *Ferens*, 494 U.S. at 523.

Benne alleges that despite the Supreme Court's ruling in *Van Dusen*, Defendants are estopped from pleading the statute of limitations as a defense, because Defendants argued in the district court that the substantive laws of Kansas applied. Benne correctly notes that in some instances, defendants may be estopped from pleading the statute of limitations. For example, when a plaintiff is induced by fraud, misrepresentations, or deception to refrain from filing a timely action, a defendant may be estopped to plead the statute of limitations as a defense. *Simicuski v. Saeli*, 377 N.E.2d 713, 716 (N.Y. 1978).

Even if the defendants argument's in the New York district court for application of Kansas substantive law could require a change from New York to Kansas statute of limitations, the doctrine of equitable estoppel would be inapplicable here. Benne filed her action in New York. At the time she filed her suit, she had notice of both the applicable New York and Kansas statutes of limitation. Now, she would have the court apply the Kansas statute of limitations because of arguments Defendants made before the district court. Benne's choice of New York on both the substantive tort issues and the accompanying statute of limitations was not in any manner affected by the actions of Defendants. Neither Defendant induced her to file her action in New York rather than

6

Kansas. All that the Defendants have been able to accomplish is a change in venue. For precisely this type of case, the Supreme Court has concluded that the substantive laws applicable to the case will not change by the Defendants transfer of venue. Benne simply has failed to demonstrate how the doctrine of equitable estoppel is in any manner designed to grant relief to a plaintiff in these circumstances.

Giving effect to Benne's arguments would squarely contradict the reasoning employed by the Supreme Court in *Van Dusen* and *Ferens*. In *Van Dusen*, the Supreme Court reasoned that a venue transfer initiated by the defendant should not deprive the plaintiff of the laws of the forum that the plaintiff had selected. *Van Dusen*, 376 U.S. at 635-36. The Court noted that the legislative history of § 1404(a) "certainly does not justify the rather startling conclusion that one might `get a change of law as a bonus for a change of venue.'" *Id.* at 636. Allowing a change of law to accompany a change of venue, the Court opined, would violate the principles of the *Erie* doctrine. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The Court held it must "ensure that the `accident' of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed." *Id.* at 638.

Furthermore, in *Ferens*, the Supreme Court held that when a plaintiff initiates a change of venue pursuant to section 1404, the substantive law of transferor court's state, including statutes of

7

limitations, will apply throughout the litigation. Therefore, the law of the transferor court must apply, regardless of who initiates the change. The rule articulated in the *Ferens* and *Van Dusen* decisions prevents either party from shopping for better limitations law after the case is filed.

We agree with the district court's rejection of *Greve v. Gibraltar Enters., Inc.*, 85 F. Supp. 410 (D.N.M. 1949), the main case on which Benne relies. Like the district court, we question its applicability to the present case. *Greve*, a 1949 decision, involved a defendant's motion for a change of venue from the District of New Mexico to the District of Colorado. Since the plaintiff originally brought the action in New Mexico, the defendant pleaded the New Mexico statute of limitations. The district court in *Greve* was faced with the task of interpreting § 1404 for the first time. The court suspected that with a transfer of venue under § 1404, only the place of trial changed, not the rights of the parties or any of the underlying substantive law. In doing so, the district court anticipated the Supreme Court's interpretation of § 1404 in *Van Dusen* and *Ferens*. However, concerned that it may have misinterpreted § 1404, the court ruled in the alternative that the defendant had waived application of the Colorado statute of limitations. In the hearing on the venue transfer motion, the defendant stated in open court that it would not frustrate plaintiff's action in the event of a transfer to Colorado by pleading the since expired Colorado statute of limitations. The district court stated that in the event it had

8

misinterpreted § 1404, it could rely on defendant's promise not to plead the more restrictive Colorado statute to ensure that the New Mexico statute of limitation would be applied.

Benne analogizes her case to *Greve*. She contends that a number of assertions made by Defendants before the district court amounted to a waiver of the application of the New York statute of limitations. For example, Defendants stated in their brief in support of their venue transfer motion:

> Clearly, New York substantive law cannot apply to these actions. The plaintiffs, their employments, their injuries and the witnesses have no connection whatsoever to New York. Thus the law governing each plaintiff's prima facie case, the availability of defenses, issues of contributory negligence and punitive damages vary from state to state.

Appendix at 253. Benne also points to assertions in two affidavits accompanying this motion which state Defendants' understanding that the substantive laws of New York did not apply to Benne's action.

We must discount Benne's reliance on *Greve* for two reasons. First, *Greve* is factually distinguishable from Benne's case. In *Greve*, the defendants clearly stated that they would not plead the Colorado statute of limitations. The court held this was a waiver of the defense of the Colorado statute of limitations. In contrast, the general assertions made by Defendants in this case fall short of an absolute waiver. Furthermore, when Defendants in this case argued that Kansas substantive law should apply, the record reveals that Defendants were making a conflicts of law argument, not an argument over the general applicability of New York or Kansas law. Instead of arguing, as Benne would have the

9

court believe, that Kansas substantive law and statutes of limitation should apply outright, Defendants are arguing that the proper application of New York substantive law would eventually lead to the application of Kansas substantive law. This argument is based upon New York's conflict principles that call for the application of another state's substantive law in tort actions where the wrong occurs in another state. *Cooney v. Osgood Mach., Inc.*, 612 N.E. 2d 277, 281-82 (N.Y. 1993); *Schultz v. Boy Scouts of America, Inc.*, 480 N.E. 2d 679, 682 (N.Y. 1985). Even were a defendant permitted to waive the statute of limitations of the transferor state in favor of the statute of the transferee state, we cannot consider the arguments made by Defendants in this case to be such a waiver of New York substantive law. The Defendants in this case were clearly arguing that within the framework of the laws of the New York, the laws of Kansas would control.

Second, as the district court noted, the continued validity of the court's alternative holding *Greve* is questionable after the Supreme Court's decisions in *Van Dusen* and *Ferens*. The law of these cases is clear. The transferee court has the obligation to apply the law of the transferor state, regardless of the attempts of the parties to change which body of substantive law applies to their claims. To the extent *Greve* is inconsistent with this doctrine, as announced in *Ferens* and *Van Dusen*, it is overruled. This is not to say that a defendant can never waive application of a statute of limitations in a venue transfer case. As mentioned above, if a defendant, either by fraud, deceit, or

10

misrepresentation, prevented plaintiff from filing a timely claim in the transferor state, then estoppel or waiver of the statute of limitations is possible.  Further, a defendant may always choose not to plead the defense of the statute of limitations, in which case, the limiations perioed would not become an issue.  Note, however, that this would be a matter strictly involving the application of the law of the transferor state, not a matter of the defendant's actions causing the court to resort to the statute of limitations of the transferee state.

Ultimately, we find it is curious that Plaintiff Benne, who had the opportunity to choose the forum of New York, would now argue that the laws of New York should not apply to her claim. Benne's peculiar position aside, the holdings of *Van Dusen* and *Ferens* require us to affirm the district court's application of the New York statute of limitations.

**B.**

Having determined that the district court correctly held that the New York statute of limitations applied to the transferred case, we now turn to whether the district court correctly applied the New York statute.

When applying the New York statute of limitations to an action arising outside of the state, the first step is to refer to the "borrowing statute." *See* N.Y. Civ. Prac. L. & R. § 202 (McKinney, 1990).  The section provides:

An action based upon a cause of action accruing without

11

> the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

*Id.* Therefore, to survive Defendants' motion for summary judgment, Benne's claims must have been timely under both the limitations periods of New York and Kansas. *See Antone v. General Motors Corp., Buick Motors Div.*, 473 N.E. 2d 742, 744 (N.Y. 1984) (where non-residents claim accrued outside of New York, his action must be timely under both states' limitations periods).

**1.**

The Kansas statute of limitations provides that an action for personal injuries must be brought within two years. Kan. Stat. Ann. § 60-513(a)(4). Such a cause of action:

> shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury or, if the fact of the injury is not reasonably ascertainable until sometime after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party . . . .

Kan. Stat. Ann. § 60-513(b). The difficulty in Benne's claim lies in determining when "the fact of [Benne's] injury" became "reasonably ascertainable." *Id.* The leading Kansas case on fact of injury is *Gilger v. Lee Constr. Inc.*, 820 P.2d 390 (Kan. 1991), a Kansas Supreme Court case. In *Gilger*, the plaintiffs suffered numerous health problems caused by an improperly vented furnace. The plaintiffs unsuccessfully sought out the cause of their

12

ailments for three years before learning that the furnace was improperly installed. Plaintiffs investigated a number of avenues in their search for the source of their recurring illnesses. They had the furnace checked for gas leaks, increased ventilation in the room at the direction of an inspector, and removed a bird's nest from the flue. When their health problems did not subside, plaintiffs had the furnace inspected twice more. It was not until an inspection in 1985 that plaintiffs learned the furnace had been improperly installed. The Kansas Supreme Court reversed a motion for summary judgment, which had been granted to defendants, holding that whether the Gilgers' injuries were reasonably ascertainable under the circumstances before 1985 was a question of fact to be resolved by a jury.

Benne claims that *Gilger* should likewise lead to a reversal of the summary judgment in her case because she did not realize that the keyboards had been negligently designed until 1992. Benne acknowledges that she was injured by 1985 and also admits she knew the cause of her injury was excessive typing on Gateway and IBM keyboards. She claims, however, that her injuries were not reasonably ascertainable until 1992 because she had no reason to believe IBM and Gateway were negligent in their keyboard design until 1992.

Benne argues that her knowledge that the keyboards caused the injury would not trigger the statute of limitations until she made the inference that a negligent design of the product, and not mere overuse of the product, caused her injury. In making this

13

argument, Benne relies on *Hecht v. First Nat'l Bank & Trust Co.*, 490 P.2d 649 (Kan. 1971), which was cited by the court in *Gilger*. In *Hecht*, a plaintiff suffered skin damage from a negligently performed radiation treatment. For a while after the injury, the plaintiff thought her injuries were merely part of the recovery process. Her doctor had informed her she was healing as she should. Finally, when her condition did not improve, plaintiff sought a second opinion and learned she needed surgery to correct her injuries. In denying defendant's motion for summary judgment on the statute of limitations issue, the court stated:

> Since the evidence presented, as we see it, is inconclusive as to what point in time plaintiff's injury could be said to be substantial or reasonably ascertainable, we conclude that plaintiff should be afforded an opportunity to *prove that she neither knew nor could reasonably have been expected to know of defendant's alleged negligence* until the date alleged in her petition [January 1967]. A summary judgment based on the premise that plaintiff on March 13, 1966, knew or could have reasonably ascertained *that she had suffered substantial injury result[ing] from alleged acts of negligence of defendants* necessitated a finding of fact which was, we believe, in good faith disputed.

*Gilger*, 820 P.2d at 399–400 (citing *Hecht*, 490 P.2d at 649).

Benne interprets this language as setting forth the rule that a plaintiff's knowledge of the cause of her injuries is irrelevant until she realizes that the designer of the product may have acted negligently. We do not believe that the Kansas Supreme Court intended to establish the rule that a plaintiff could be fully aware of the cause of her injury, yet wait to bring a claim based upon negligent design some indeterminate time later when the plaintiff develops the thought that the defendant may have been

14

negligent. Rather we believe the rule from *Hecht* is intended to give plaintiffs who suffer from latent or difficult to diagnose injuries the same advantages as those plaintiffs whose injuries are immediately connectible to their source.

Benne fails to recognize that no plaintiff ever knows prior to her suit whether the defendant is negligent. Whether a defendant is negligent is a matter to be resolved by a jury. Until this legal determination is made, a plaintiff can only allege negligence on the defendant's part. The Kansas law does not give plaintiff an infinite amount of time, after learning the cause of her injuries, to ponder whether the equipment injured her because of defendant's negligence or because of other reasons. The plaintiff must take the initiative within the limitations period to set out to prove defendant's negligence. Otherwise, claims would survive for such extensive periods of time that the statute of limitations could be completely eviscerated.

Kansas' "fact of injury" standard postpones the running of the limitations period until the time the plaintiff is able to determine that her injury may be caused by some act of the defendant. The court stated in denying the summary judgment motion in *Gilger*, "there are disputed facts as to when the appellants realized their health problems *were associated* with the allegedly improperly ventilated furnace." *Gilger*, 82 P.2d at 400 (emphasis added). In Benne's case, there is no disputed fact as to when she realized her problems were associated with the keyboards. Benne's claim is similar to the claim in *Friends Univ. v. W.R. Grace & Co.*,

15

in which the plaintiff tried to bring a claim for an improperly installed roof seven years after it began to leak. 608 P.2d 936 (Kan. 1980). The plaintiffs alleged that they did not realize until two years before they brought their claim that the leaks were caused by defendant's failure to bond the roofing material to the substructure and therefore they had not reasonably ascertained the cause of the leaks. The Supreme Court of Kansas held that plaintiffs claims fell outside of the limitations period. In commenting on *Friends University* in *Gilger*, the court stated: "[w]e determined plaintiff's failure to know the exact scientific nature of the problem did not toll the commencement of the statute of limitations where it was clearly apparent there was a severe problem with the roof caused by defective design, materials, or workmanship in 1970." *Gilger*, 820 P.2d at 400 (referencing and citing *Friends Univ.* 608 P.2d at 941).

Viewing the facts in the light most favorable to Benne, we conclude that she may not have become aware of the possibility that Defendants' negligence could have caused her injuries until as late as 1992, when she filed suit. Notwithstanding her lack of knowledge of *the exact scientific nature* of her injuries, until 1989, by as early as 1987, she knew her injury was associated with excessive typing on Defendants' keyboards. The statute of limitations commenced running at that time. Accordingly, Benne's claims should have been brought no later than 1989. We hold that the district court correctly concluded that Benne's cause of action was barred by the Kansas two-year statute of limitations.

16

**2.**

In New York, an action to recover damages for personal injuries, including strict product liability, must be commenced within three years from the date the cause of action accrues. Unlike the Kansas limitations statute, the New York limitations period commences on the date of injury. N.Y. Civ. Prac. L. & R. § 214 (McKinney 1990); *Snyder v. Town Insulation, Inc.*, 615 N.E.2d 999, 1000-01 (N.Y. 1993). The injury itself, rather than the negligent act by defendant or the discovery of the wrong by plaintiff, marks the date of accrual. *Piper v. International Business Machs.*, 639 N.Y.2d 623, 624 (N.Y. App. Div. 1996) (citing *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289 (1993)). New York courts have recently affirmed this rule as it applies to repetitive stress injuries such as Benne's. *See Piper*, 639 N.Y.2d at 624; *In re New York County Data Entry Worker Product Liability Litigation*, 1994 WL 900221 (N.Y. Sup. Ct. 1994). In *Piper* the court held that the limitations period commenced to run when the plaintiff first experienced symptoms of carpal tunnel syndrome, not when the symptoms developed into a diagnosable condition. *Piper*, 639 N.Y.2d at 623.

The district court found that Benne's injury manifested itself in 1985, at the latest, when she was diagnosed with overuse syndrome of both arms, bilateral carpal tunnel tendinitis, and left entrapment neuropathy at the elbow of the ulnar nerve. Based upon this diagnosis, the district court did not err in holding Benne's claim barred by the New York statute of limitations.

17

After the district court entered judgment for Defendants, Benne moved for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). She claimed that certain aspects of her injuries still made her claim timely under the New York statute of limitations. We review the district court's denial of this motion for abuse of discretion. *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994).

An exception to New York's strict statute of limitations exists "where a plaintiff, first injured prior to the three year statutory period alleges qualitatively different injuries occurring within the statutory period." *Kuechler v. 805 Middlesex Corp.*, 866 F. Supp. 147, 148 (S.D.N.Y. 1994). The plaintiff may sustain claims based on the new and distinct injuries. *Id.* In support of her claims, Benne submitted an affidavit stating that the symptoms she suffered after December 18, 1989 were new and qualitatively different than the symptoms she suffered before that date. Her physician, Dr. Schlachter also submitted an affidavit attesting to the same changes in Benne's symptoms.

A Rule 59(e) motion to reconsider should be granted only "to correct manifest errors of law or to present newly discovered evidence." *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992) (quoting *Hansco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985, *cert. denied*, 476 U.S. 1171 (1986)). The district court denied Benne's motion, concluding that no manifest error of law had been committed in the first decision and

18

that the factual statements that Benne submitted were inadmissible due to their conclusory nature. Based upon the limited scope provided for granting a motion to reconsider, we hold that the district court did not abuse its discretion in denying Benne's motion.

No manifest error of law was committed because the district court followed New York precedents that establish when the limitations period commences for a repetitive stress injury suit. The district court did not depart from established law. Second, the evidence presented by Benne in her affidavits was not newly discovered. In the affidavits, Benne and Dr. Schlachter allege the nature of Benne's injuries changed on or around December 18, 1989. This information could not have been newly discovered when the district court granted summary judgment to the Defendants in 1994.

## IV.

We therefore hold that the district court neither erred in its application of the law nor abused its discretion in denying Benne's motion for reconsideration. For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for Defendants IBM and Gateway, as well as the court's denial of Benne's motion for reconsideration.