Laurie TAYLOR, et al.

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
et al.

Civil Action No. CCB–96–1119.

United States District Court,
D. Maryland.

April 25, 1997.

Mary Rose E. Cook, Cooper, Beckman & Tuerk, L.L.P., Baltimore, MD, for Plaintiffs.

J. Hardin Marion, Tydings & Rosenberg, L.L.P., Baltimore, MD, for Defendants.

## MEMORANDUM

BLAKE, District Judge.

Now pending is the motion for summary judgment of the defendant, International Business Machines Corporation, ("IBM"), in this case involving claims of negligence, strict liability, and breach of warranty. The plaintiffs allege that they suffered repetitive stress injuries ("RSIs") from using IBM's equipment while working as grocery store cashiers. IBM argues that the plaintiffs' claims are time barred. This matter has been briefed fully, and no hearing is necessary. *See* Local Rule 105.6.

In April 1993, the plaintiffs, Laurie Taylor, Shirley and James Grimes, Donna Hayes, Janet and Jacob Roth, Donna Mills, Milton Mosley, Elizabeth Proctor, Deborah and Harry Mason, Susan and Jon Brenner, Rose and Carl Ruff, Cheryl and Mario Blasie, Mary and John Cunningham, Jeannette Cameron, Deborah Jo and Stephen Green, and Bobbie and Al Jenkins, filed suit in the United States District Court for the Eastern District of New York. Upon IBM's motion, in April 1996 the case was transferred to this court pursuant to 28 U.S.C. § 1404(a).[1] IBM now has filed a motion for summary judgment on the ground that the claims of Laurie Taylor, Shirley and James Grimes, Janet and Jacob Roth, Milton Mosley, Elizabeth Proctor, Deborah and Harry Mason, Susan and Jon Brenner, Mary and John Cunningham, and Bobbie and Al Jenkins are time barred.[2]

---

1. The claims of plaintiffs Donna Hayes, Rose and Carl Ruff, Cheryl and Mario Blasie, Jeannette Cameron, and Deborah Jo and Stephen Green were dismissed by this court in November 1996 with prejudice for failure to prosecute and for failure to comply with the court's order. In addition, the court will sever the claims of Bobbie and Al Jenkins by separate order.

2. Because Bobbie and Al Jenkins will no longer be parties to this action, the court will deny as moot IBM's request for summary judgment as to their claims.

   In addition, the court notes that IBM has not filed for summary judgment on the claim of plaintiff Donna Mills. Donna Mills has been employed with Giant Food since September

For the reasons set forth below, the motion for summary judgment will be granted as to the claims of plaintiffs Shirley and James Grimes, Milton Mosley, Susan and Jon Brenner, Deborah and Harry Mason, and Elizabeth Proctor, and denied as to the claims of plaintiffs Laurie Taylor, Janet and Jacob Roth, and Mary and John Cunningham.

Laurie Taylor has been employed as a cashier with Giant Food since June 1972 and began using IBM equipment at that time. (*See* Compl. ¶¶ 43, 44.) In May 1990 Ms. Taylor began "to experience discomfort in her upper extremities." (Taylor Aff. ¶ 6, Pls.' Opp'n Ex. 1.) In that same month Ms. Taylor's doctor diagnosed her with carpal tunnel syndrome. (*Id.* ¶ 7.) Following this diagnosis, she continued to use IBM equipment. (*See* Compl. ¶ 44.)

Janet Roth has been employed as a cashier with Giant Food since May 1985 and began using IBM equipment at that time. (*See id.* ¶¶ 53, 54.) She first experienced symptoms of numbness, tingling, and pain in her upper extremities in the summer of 1990. (*See id.* ¶ 115.) In November 1991 she was diagnosed with bilateral carpal tunnel syndrome, (*see id.* ¶ 116), but continued to use IBM equipment, (*see id.* ¶ 54).

Elizabeth Proctor has been employed as a cashier with Giant Food since 1973 and began using IBM equipment at that time. (*See* Proctor Aff. ¶¶ 3, 4, Pls.' Opp'n Ex. 2.) She first experienced symptoms in her right arm and hand before February 1990. (*See* Compl. ¶ 123.) In February 1990 she was diagnosed with right carpal tunnel syndrome and underwent surgery in April 1990. (*See* Proctor Aff. ¶¶ 6, 7, Pls.' Opp'n Ex. 2.) In August 1991 she experienced symptoms in her upper body and was diagnosed with impingement syndrome of the right shoulder in April 1992. (*See id.* ¶¶ 10, 12.) She continues to use IBM equipment in her job. (*See* Compl. ¶ 64.)

Deborah Mason has been employed as a cashier with Giant Food since July 1974, (*see* Mason Aff. ¶ 3, Pls.' Opp'n Ex. 3), and in 1976 she began using IBM equipment, (*see* Compl. ¶ 66). In 1989 she experienced symptoms of numbness, tingling, and pain or motor sensory impairment in her upper extremities. (*See id.* ¶ 125.) In February 1989 she was diagnosed with tendinitis. (*See* Mason Aff. ¶ 5, Pls.' Opp'n Ex. 3.) In March 1990 she was diagnosed with carpal tunnel syndrome. (*See id.*) In July 1991 she again experienced discomfort in her upper extremities. (*See id.* ¶ 8.) In May 1992 she was diagnosed with bursitis and tenosynovitis of the right shoulder and elbow. (*See id.* ¶ 9.) She continued to use IBM equipment. (*See* Compl. ¶ 66.)

Mary Cunningham has been employed as a cashier with Giant Food since December 1981 and began using IBM equipment at that time. (*See id.* ¶¶ 77–78.) She first experienced symptoms of numbness, tingling, and pain in her upper extremities in November 1992. (*See id.* ¶ 135.) In December 1992 she was diagnosed with bilateral carpal tunnel syndrome. (*See id.* ¶ 136.) She continued to use IBM equipment. (*See id.* ¶ 78.)

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

1990, began using IBM equipment at that time, (*see* Compl. ¶¶ 59, 60), and first experienced symptoms of numbness, tingling, and pain in her upper extremities in April 1991, (*see* Compl. ¶ 119). Thus, even under IBM's proposal that a cause of action accrues for purposes of the running of the statute of limitations on the date of a plaintiff's first use of the product, because she first used the equipment in September 1990, Donna Mills' claim is not time barred.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

Moreover, the Supreme Court has explained that the Rule 56(c) standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The Court has stated that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511; *see also Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 814, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *Catawba Indian Tribe v. South Carolina,* 978 F.2d 1334, 1339 (4th Cir.1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.,* 840 F.2d 236, 240 (4th Cir.1988). The court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," *Shaw,* 13 F.3d at 798, but it also must abide by its affirmative obligation to ensure that factually unsupported claims and defenses do not proceed to trial, *see Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). "[A] defendant ... should not be required to undergo the considerable expense of preparing for and participating in a trial" unless the plaintiff has produced evidence on which a jury might rely in support of the claims alleged. *E.F. Hutton Mortgage Corp. v. Equitable Bank, N.A.,* 678 F.Supp. 567, 573 (D.Md.1988).

■ Because these diversity claims were transferred here under 28 U.S.C. § 1404(a), the law of the state in which the transferor court sits must be applied. *See Ferens v.* *John Deere Co.,* 494 U.S. 516, 523, 110 S.Ct. 1274, 1279–80, 108 L.Ed.2d 443 (1990); *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964) ("[T]he transferee district court must ... apply the state law that would have been applied if there had been no change of venue."); *see also Yoder v. Honeywell, Inc.,* 104 F.3d 1215, 1219 (10th Cir.1997) (applying New York law to RSI case transferred from New York to Colorado under § 1404(a)); *Thorn v. International Business Machs., Inc.,* 101 F.3d 70, 72–73 (8th Cir.1996) (applying New York law to RSI case transferred from New York to Missouri under § 1404(a)); *Benne v. International Business Machs. Corp.,* 87 F.3d 419, 423 (10th Cir.1996) (applying New York law to RSI case transferred from New York to Kansas under § 1404(a)). Accordingly, this court will apply New York law.

■ To determine the statute of limitations for an action such as this one, arising outside the state of New York, New York applies its "borrowing statute." [3] Under the "borrowing statute," a complaint must be filed within the time prescribed by both the statute of limitations for New York and the statute of limitations for the state where the cause of action accrued, in this case Maryland. *See* N.Y. C.P.L.R. § 202 (McKinney 1990); *Yoder,* 104 F.3d at 1224; *Thorn,* 101 F.3d at 73; *Benne,* 87 F.3d at 425; *Cuccolo v. Lipsky, Goodkin & Co.,* 826 F.Supp. 763, 767 (S.D.N.Y.1993). Thus, if either the Maryland or the New York statute of limitations expired as to a particular plaintiff's claim prior to April 1993, that claim is time barred. IBM has not argued that the more lenient Maryland "discovery rule" would bar the claims in this case. *See* Md.Code Ann., *Cts. & Jud. Proc.* § 5–101 (1996); *Pennwalt Corp. v. Nasios,* 314 Md. 433, 452, 550 A.2d 1155, 1165 (1988) (holding that, under Maryland law, the period begins to run when the plaintiff knows or should know that she sustained injury which may be attributable to wrongdoing or product defect). Accordingly, only the

**3.** Specifically, the "borrowing statute" provides: An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the law of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply. N.Y. C.P.L.R. § 202 (McKinney 1990).

New York statute of limitations needs to be addressed.

■ Under New York law, a claim for personal injury must be filed within three years of the date on which the action accrued. *See* N.Y. C.P.L.R. § 214(5) (McKinney 1990). Although this court is bound to act as the New York Court of Appeals would, *see Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967), New York's highest court has not determined the date on which an action accrues for an RSI suffered from the continual use of a keyboard, cash register scanner, or other similar equipment. *See Evans v. Visual Tech. Inc.,* 953 F.Supp. 453, 456 (N.D.N.Y.1997) ("The determination of accrual in an RSI case is presently unsettled under New York law.") (publication in the Federal Supplement forthcoming); *Dorsey v. Apple Computers, Inc.,* 936 F.Supp. 89, 90 (E.D.N.Y.1996) ("The New York Court of Appeals has not yet ruled on when the statute of limitations begins to run in RSI cases."). Other federal courts considering RSI cases have relied on New York intermediate appellate court decisions as persuasive evidence of how the New York Court of Appeals will decide the limitations issue. *See, e.g., Thorn,* 101 F.3d at 73–74; *Benne,* 87 F.3d at 427–28; *Evans,* 953 F.Supp. at 455–56 ; *Harrison v. Olivetti Office USA, Inc.,* 939 F.Supp. 5, 7 (D.D.C.1996).

The parties suggest at least three possible tests for determining the date on which an RSI cause of action accrues. Arguing that the statute of limitations has not expired, the plaintiffs first contend that the applicable date of accrual in an RSI action is determined by the "discovery rule" found in N.Y. C.P.L.R. § 214–c (McKinney 1990). Section 214–c commences the period in which a plaintiff may recover for her injuries on the date of the "discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." *Id.* The plaintiffs contend in the alternative that the court should follow the "onset of symptoms" rule that commences the statutory period on the date of the onset of a plaintiff's symptoms. *See Pip-*

*er v. International Business Machs. Corp.,* 219 A.D.2d 56, 639 N.Y.S.2d 623, 626 (4th Dep't 1996). In contrast, arguing that the statute of limitations has expired for each plaintiff, IBM urges the court to adopt the "first use" rule that would commence the running of the statutory period on the day a plaintiff first used the product. *See Blanco v. American Tel. & Tel. Co.,* 223 A.D.2d 156, 646 N.Y.S.2d 99, 104 (1st Dep't), *appeal granted,* 652 N.Y.S.2d 503 (1996). The defendant also concedes that the onset of symptoms rule may apply in the alternative. Thus, the court must choose between the discovery rule, the onset of symptoms rule, and the first use rule.

■ The court is not persuaded that the discovery rule should be applied in this case. Although under a literal reading of the statute it may appear applicable, *see* N.Y. C.P.L.R. § 214–c (applying to "an action to recover damages for personal injury . . . caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body"), it has been applied only in cases involving exposure to toxic chemicals, biological substances, energy, and other naturally occurring substances. *See, e.g., Prego v. City of New York,* 147 A.D.2d 165, 541 N.Y.S.2d 995, 996 (2d Dep't 1989) (involving injury from a needle contaminated with the AIDS virus); *Ford v. American Tel. & Tel. Co.,* 154 Misc.2d 894, 586 N.Y.S.2d 721, 722 (Sup.Ct. N.Y. County 1992) (involving injury from exposure to microwave radiation). Finding that the statute has limited application, other courts examining this issue uniformly have refused to apply § 214–c to RSI claims. *See, e.g., Coughlin v. International Business Machs. Corp.,* 225 A.D.2d 256, 650 N.Y.S.2d 477, 479 (3d Dep't 1996); *Blanco,* 646 N.Y.S.2d at 102 ("Simply put, a keyboard is not a substance, toxic or otherwise."); *see also Thorn,* 101 F.3d at 74 (noting that New York and federal courts have held that § 214–c does not apply to RSI cases); *Harrison,* 939 F.Supp. at 7; *Parajecki v. International Business Machs. Corp.,* 899 F.Supp. 1050, 1054 (E.D.N.Y. 1995), *vacated in part on other grounds,* 165 F.R.D. 20 (1996); *Kuechler v. 805 Middlesex Corp.,* 866 F.Supp. 147, 148 (S.D.N.Y.1994).

"CPLR 214–c cannot reasonably be construed as applying to [RSI] claims, …, wherein an injury or disease is not alleged to have resulted from the nature of the substances to which the plaintiff is exposed, but rather from the physical configuration of an object—here, the layout of a keyboard." *Coughlin,* 650 N.Y.S.2d at 479. Because the plaintiffs were not injured simply by exposure to IBM's equipment, but rather by the design of the product, § 214–c does not apply.

Despite the great number of courts finding otherwise, the plaintiffs make several arguments in an attempt to convince this court that § 214–c should apply. First, the plaintiffs suggest the *Dorsey* opinion stated that § 214–c applies to RSI cases. (*See* Pls.' Opp'n at pp. 13–14.) Second, relying primarily on § 214–c's language indicating that it applies to cases involving exposure to "any substance or combination of any substances in any form," the plaintiffs argue that the plain language of the statute includes keyboards, cash register scanners, and other similar equipment. (*See* Pl.'s Opp'n at pp. 18–19.) Also, urging that § 214–c is to be liberally construed, the plaintiffs contend that it is a "'broad and all encompassing' statute out of which artificial exceptions' may not be carved." (*See id.* at pp. 20–21.)

The court finds none of these arguments persuasive. The *Dorsey* court did not consider whether § 214–c applies to RSI cases. *See Dorsey,* 936 F.Supp. at 91 ("CPLR 214–c [ ] may apply to RSI, but [its application] need not be considered in the instant case."). Thus, while *Dorsey* does not preclude the application of § 214–c in RSI cases, it does not support its application. The plaintiffs' arguments that the plain language of the statute makes it applicable to the RSI cases, or that at a minimum § 214–c should be interpreted broadly so as to include RSI, are equally unconvincing. As the *Blanco* court explained, "While it is true that statutes such as CPLR § 214–c, because they are remedial in nature, must be liberally interpreted …

the construction urged by plaintiffs would effectively leave no 'thing' excluded." 646 N.Y.S.2d at 102. As a result, the statute would be "meaningless" and would apply "universally." *See id.* That this was not the intention of the New York legislature is indicated by the fact that the legislature found it necessary to amend the statute to bring breast implant claims within its ambit. *See id.* Because the plaintiffs have failed to submit any persuasive authority or arguments to the contrary, and because the case law appears unanimous on this point, § 214–c will not be applied to RSI claims in this case.

■ Having rejected the applicability of § 214–c, the court now must decide between the onset of symptoms rule, *see Piper,* 639 N.Y.S.2d at 624, and the first use rule, *see Blanco,* 646 N.Y.S.2d at 104. In *Piper,* New York's fourth appellate department adopted an approach first set forth in part in *Wallen v. American Tel. & Tel. Co.,* Index No. 12336/91 (Sup.Ct. N.Y. County Sept. 17, 1992), *aff'd,* 195 A.D.2d 417, 601 N.Y.S.2d 796 (1st Dep't) (for the reasons stated by the supreme court of N.Y. County), *leave to appeal denied,* 82 N.Y.2d 659, 605 N.Y.S.2d 5, 625 N.E.2d 590 (1993), and held that "accrual [in an RSI case] is measured from the earlier of two dates: the plaintiff's last use of the computer equipment … or the onset of the plaintiff's symptoms.…" 639 N.Y.S.2d at 627.[4] In *Blanco,* on the other hand, the first appellate department distinguished *Wallen* and held that "each plaintiff's cause of action accrued upon the commencement of their use of the allegedly defective keyboard, regardless of when their symptoms first manifested themselves.…" 646 N.Y.S.2d at 104. Before the *Blanco* decision, federal courts routinely followed the rule described in *Piper. See Benne,* 87 F.3d at 427–28 (barring claim brought more than three years following the manifestation of plaintiff's symptoms); *Harrison,* 939 F.Supp. at 7 (barring claim brought more than three years following the onset of plaintiff's symptoms); *Parajecki,*

---

**4.** To the extent the plaintiffs argue that under *Piper* the date on which the action accrues is the date on which an injury is diagnosed by a doctor, the court finds no support for this position in the case law and rejects it. *See Benne,* 87 F.3d at

428 ("In *Piper* the court held that the limitations period commenced to run when the plaintiff first experienced symptoms of carpal tunnel syndrome, not when the symptoms developed into a diagnosable condition.")

899 F.Supp. at 1055 (barring claim brought more than three years following plaintiff's last use of the product); *Kuechler*, 866 F.Supp. at 149 (dismissing claims for injuries where symptoms were manifested more than three years before the filing of the complaint).[5] Since the *Blanco* decision, at least one federal court has followed the *Blanco* rule. *See McCarson v. Sperry Rand Corp.*, 939 F.Supp. 156, 157 (D.Conn.1996) ("I am persuaded that the New York Court of Appeals would reach the same conclusion as the Appellate Division in *Blanco*."). Other federal courts have rejected the *Blanco* rule, however, in favor of the *Wallen/Piper* onset of symptoms rule. *See Evans*, 953 F.Supp. at 457–60 (adopting *Piper's* onset of symptoms rule); *Dorsey*, 936 F.Supp. at 92 ("[T]he decision in *Blanco* ... cannot be accepted as an accurate statement of New York law.").[6]

This court is persuaded that the *Wallen/Piper* rule, under which the statute of limitations begins to run on the date of the first onset of symptoms or the last use of the product, is the better rule, and the one that will be adopted by the New York Court of Appeals. It has long been the law in New York that "a tort cause of action cannot accrue until an injury is sustained." *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 595 N.Y.S.2d 931, 934, 612 N.E.2d 289, 292 (1993). As the court explained, "[A]ccrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint." *Id.* An RSI by definition is sustained after the plaintiff has engaged in repetitive, stressful use of

a product over a period of time. *See Evans*, 953 F.Supp. at 457–59. It is unlikely that a plaintiff will sustain compensable injury the first time she touches a keyboard. "[I]f a date of first exposure rule applied in cases of repetitive stress injury, 'a cause of action might be barred before liability arose.'" *Piper*, 639 N.Y.S.2d at 626 (quoting *Schmidt v. Merchants Despatch Transp. Co.*, 270 N.Y. 287, 200 N.E. 824, 827 (1936)); *see also Dorsey*, 936 F.Supp. at 92.[7] On the other hand, any injury for which a defendant may be held liable must have occurred while the plaintiff was using its product, justifying a three-year deadline for filing a claim after a plaintiff stops using the product. Moreover, the cases relied on by the *Blanco* court to arrive at its decision were toxic tort cases, which are distinguishable from RSI claims. *See Evans*, 953 F.Supp. at 457–59; *Dorsey*, 936 F.Supp. at 92 ("There is a distinction in the cases between external substances that have somehow been absorbed or integrated into a person's body and those that have not. Where a foreign item has not been 'assimilated,' ..., and the courts have been able to fix a date of harm, the New York courts use that identifiable date of injury as the beginning of the statutory accrual period."). The *Wallen/Piper* rule best comports with New York's policy of balancing fairness to a plaintiff, by giving her reasonable time to pursue her claim after she has been injured, with fairness to a defendant, by ensuring it will not be forced to respond to claims after years of inappropriate or prejudicial delay. *See Dorsey*, 936 F.Supp. at 91. Accordingly, that

---

**5.** This approach also was followed by Judge William M. Nickerson of this court, prior to *Blanco*, in deciding the defendants' motion for summary judgment in *Hartman v. AT & T Corp.*, Civil No. WMN–95–475 (D.Md. May 3, 1996).

**6.** Two other federal courts, discussing the appropriate date of accrual for RSI claims post-*Blanco*, also followed the *Wallen/Piper* onset of symptoms rule, but did not explicitly state their reasons for rejecting *Blanco*. *See Yoder*, 104 F.3d at 1225 (commencing the running of the statute of limitations on the date the plaintiff first experienced symptoms); *Thorn*, 101 F.3d at 74 (commencing the running of the statute of limitations on the first onset of symptoms).

Also, at least three New York intermediate appellate courts have considered the issue post-

*Blanco*, but because the plaintiffs' claims were barred under either formulation, the courts found it unnecessary to decide which rule applied. *See Hayes v. International Business Machs. Corp.*, —— A.D.2d ——, 655 N.Y.S.2d 410, 411 (2d Dep't 1997) ("Under either approach the plaintiff's claims are untimely.... "); *Carpenter v. Matsushita Elec. Corp. of Am., Inc.*, —— A.D.2d ——, 650 N.Y.S.2d 1021, 1021 (3d Dep't 1996); *Coughlin*, 650 N.Y.S.2d at 479.

**7.** The *Blanco* court recognized this possibility, but apparently believed that the only way to avoid this admittedly unfortunate result was through legislative action. *See* 646 N.Y.S.2d at 104.

rule will be applied in determining whether the plaintiffs' claims are time barred.

■ Under *Piper*, because plaintiff Laurie Taylor first experienced symptoms in May 1990, (*see* Taylor Aff. ¶ 6, Pls.' Opp'n Ex. 1), plaintiff Janet Roth first experienced symptoms in the summer of 1990, (*see* Compl. ¶ 115), plaintiff Mary Cunningham first experienced symptoms in November 1992, (*see id.* ¶ 135), and all three continued using IBM equipment after those dates, (*see id.* ¶¶ 44, 54, 78), their claims and those of their husbands, filed in April 1993, are not time barred. Accordingly, summary judgment will be denied.[8]

The remaining primary plaintiffs, Deborah Mason and Elizabeth Proctor, both experienced symptoms prior to April 1990—more than three years before the filing of this suit.[9] They make several arguments in an effort to convince the court that they suffered separate and distinct injuries within the statutory period or that the statute of limitations should be extended to include their claims.

■ Plaintiffs Mason and Proctor first contend that they suffered separate and distinct injuries within the statutory period for which they should be entitled to recover. Under New York law, a plaintiff may recover for RSIs suffered within the statute of limitations subsequent to injuries suffered outside the statutory period, provided the more re-cent injuries are separate and distinct or qualitatively different from those suffered outside the statutory period. *See Thorn*, 101 F.3d at 74 ("[W]hen a plaintiff is first injured prior to the three-year statutory period but alleges qualitatively different injuries occurring within the statutory period, he or she may sustain claims based on the later harm."); *Parajecki*, 899 F.Supp. at 1058 (barring claim for injury diagnosed within statutory period because plaintiff provided no evidence this injury was separate and distinct from injuries suffered outside of the statutory period); *Harrison*, 939 F.Supp. at 7 ("Any new injuries had to be 'qualitatively different.'"); *Piper*, 639 N.Y.S.2d at 627 (allowing recovery for carpal tunnel syndrome in the left hand suffered within the statutory period, based upon doctor's affidavit that left hand injury was separate and distinct from carpal tunnel syndrome in right hand suffered outside of statutory period and upon plaintiff's sworn statement that she experienced no symptoms in left hand prior to date of commencement of running of statute of limitations). To survive a motion for summary judgment, the plaintiff must come forward with evidence that the injury suffered within the statutory period is separate and distinct from any injury she suffered outside the statutory period. *See Parajecki*, 899 F.Supp. at 1058 ("Plaintiffs must ... come forward with some evidence that any injuries sustained ... *within* the statutory period

---

8. Plaintiffs Shirley and James Grimes, Milton Mosley, and Susan Brenner and Jon Brenner failed to oppose IBM's motion for summary judgment. Each of these plaintiffs suffered symptoms or last used IBM's equipment more than three years before the filing of the complaint in April 1993. Shirley Grimes experienced her first symptoms in March 1986, (*see* Compl. ¶ 109), and stopped using the IBM equipment in March 1989, (*see id.* ¶ 47). James Grimes' claim is derivative of his wife's and consequently, is time barred as well. *See Jordan v. Lipsig, Sullivan, Mollen & Liapakis, P.C.*, 689 F.Supp. 192, 196–97 (S.D.N.Y.1988). Milton Mosley first experienced symptoms in May 1985. (*See* Compl. ¶ 121.) Susan Brenner first experienced symptoms in April 1986, (*see id.* ¶ 127), and stopped using IBM equipment in May 1989, (*see id.* ¶ 67). Jon Brenner's claim is derivative of his wife's and consequently, is time barred as well. *See Jordan*, 689 F.Supp. at 196–97. Accordingly, IBM's motion will be granted as to these claims.

9. Ms. Mason first experienced symptoms of numbness, tingling, and pain or motor sensory impairment in her upper extremities in 1989. (*See id.* ¶ 125.) In February 1989 she was diagnosed with tendinitis. (*See* Mason Aff. ¶ 5, Pls.' Opp'n Ex. 3.) In March 1990 she was diagnosed with carpal tunnel syndrome. (*See id.*) In July 1991 she again experienced discomfort in her upper extremities. · (*See id.* ¶ 8.) In May 1992 she was diagnosed with bursitis and tenosynovitis of the right shoulder and elbow. (*See id.* ¶ 9.)

Ms. Proctor first experienced symptoms in her right arm and hand before February 1990. (*See* Compl. ¶ 123.) In February 1990 she was diagnosed with right carpal tunnel syndrome and underwent surgery in April 1990. (*See* Proctor Aff. ¶¶ 6, 7, Pls.' Opp'n Ex. 2.) In August 1991 she experienced symptoms in her arm, shoulder, and neck and was diagnosed with impingement syndrome of the right shoulder in April 1992. (*See id.* ¶¶ 10, 11, 12.)

were separate and distinct from any injuries ... sustained *outside* the statutory period.") (emphasis in the original); *Coughlin*, 650 N.Y.S.2d at 480 ("[I]t was incumbent upon plaintiffs to come forth with factual substantiation of their assertions of 'new injury' within the limitations period ..., sufficient to demonstrate not only when such injury occurred, but also that it is, in fact, qualitatively different from that sustained earlier.") In this case, the plaintiffs have failed to introduce sufficient evidence that the injuries they suffered within the statutory period were separate and distinct from the injuries suffered outside the statutory period.

Plaintiff Deborah Mason relies on allegations in the complaint, her own affidavit (Pls.' Opp'n Ex. 3), the affidavit of Dr. Carlton (Pls.' Opp'n Ex. 7), and the conclusory statements of her attorneys. None of these documents support the plaintiff's contention that her bursitis and tenosynovitis suffered within the statutory period are separate and distinct from the tendinitis and carpal tunnel syndrome suffered outside of the statutory period. Indeed, Dr. Carlton's affidavit may be read to support the opposite conclusion. In it, he states, "RSI occurs over months or years due to repeated insults which result in multiple traumas, injuries, reinjuries and aggravation of prior injuries.... There is no single injury, but rather an accumulation of injuries to the soft tissues—muscle, nerve, tendons, and blood vessels...." (Carlton Aff. ¶¶ 5, 9, Pls.' Opp'n Ex. 7.) Dr. Carlton also states that "initial symptoms may relate to discrete causes or injuries which are different from those symptoms which the patient presents later" but, "[c]linical judgments on a case-by-case basis are required to relate particular symptoms to particular injuries." (*Id.* ¶ 11.) Dr. Carlton did not examine Ms. Mason or her medical records and offers no opinion on whether her injuries are separate and distinct.

Moreover, Ms. Mason does not state that she suffered from any separate and distinct or qualitatively different injuries in the statutory period. The complaint states that "on or about 1989, plaintiff began to experience some symptoms such as numbness, tingling,

pain and/or sensory motor impairments of the upper extremities, neck, and torso." (Compl. ¶ 125.) In Mrs. Mason's affidavit, she states that she was diagnosed with tendinitis in February 1989 and carpal tunnel syndrome in March 1990. (Mason Aff. ¶ 5, Pls.' Opp'n Ex. 3.) Although these conditions resolved, in July 1991 Ms. Mason again experienced discomfort in her upper extremities. (*Id.* ¶¶ 6, 8.) In May 1992 she was diagnosed with bursitis and tenosynovitis of the right shoulder and elbow. (*Id.* ¶ 9.) Thus, both within and outside the statutory period, Ms. Mason suffered symptoms in her upper extremities. On this record, the court cannot find that any of Ms. Mason's more recent injuries, regardless of diagnosis, are separate and distinct from those suffered outside the statutory period. *See Parajecki*, 899 F.Supp. at 1057 ("It may be that [plaintiff's] alleged ... injury is separate and distinct from the injuries that she allegedly sustained outside the statutory period. Plaintiffs, however, have provided *no* evidence, expert or otherwise, to support that contention.").

Ms. Proctor's claim of separate and distinct injury is unsupported as well. She relies on allegations in the complaint, her own affidavit (Pls.' Opp'n Ex. 2), Dr. Carlton's affidavit (Pls.' Opp'n Ex. 7), and the conclusory statements of her attorneys. In her affidavit, she states that she experienced pain in her right arm and hand and was diagnosed with carpal tunnel syndrome in February 1990. (Proctor Aff. ¶¶ 5, 6, Pls.' Opp'n Ex. 2.) In August 1991 she suffered discomfort in her upper body and extremities, including her arm, shoulder, and neck, and in April 1992 she was diagnosed with impingement syndrome of the right shoulder. (*Id.* ¶¶ 10–12.) Thus, both within and outside the statutory period Ms. Proctor suffered symptoms in her arm and areas closely connected to it (i.e., her shoulder or her hand). Moreover, no expert medical evidence is offered in support of her claim. On this record, the court cannot find that any of Ms. Proctor's injuries within the statutory period are separate and distinct from those suffered outside the statutory period.[10]

10. Both plaintiffs assert in their affidavits that

the diagnoses received within the statutory peri-

In *Piper*, the court permitted the plaintiff to pursue her claim for carpal tunnel syndrome injuries in her left hand, even though the carpal tunnel syndrome injuries in her right hand were barred by the statute of limitations. 639 N.Y.S.2d at 627. In that case, however, the plaintiff submitted expert medical proof that the left carpal tunnel syndrome was separate and distinct from the right carpal tunnel syndrome, and the plaintiff swore that she experienced no symptoms in her left hand before the statute of limitations began to run. *Id.* Ms. Mason and Ms. Proctor have failed to present similar persuasive evidence.

■ Ms. Mason and Ms. Proctor next contend that they may recover for any aggravation of existing injuries within the statutory period. Under New York law, however, a plaintiff may not recover for aggravation or exacerbation of existing RSI injuries first suffered outside the statutory period. *See Kuechler*, 866 F.Supp. at 149 ("The time of injury is not extended by further exacerbating use of an injurious product."); *Coughlin*, 650 N.Y.S.2d at 480 ("It is a settled principle that once a compensable injury has occurred, the time within which an action may be commenced may not be extended merely by the aggravation, or exacerbation, of that injury by continued contact with the same offending product."); *see also Harrison*, 939 F.Supp. at 7 ("Relying on the *Wallen* decision, this Court concluded that the onset of symptoms was the event that triggered the running of the statute and that exacerbation of existing injuries did not extend the statute of limitation period."); *Piper*, 639 N.Y.S.2d at 627 (permitting recovery only for separate and distinct injury that could not "be characterized as an aggravation or exacerbation of the" injury suffered outside of the statutory period).

In sum, because Ms. Mason and Ms. Proctor first experienced symptoms prior to April 1990, and because they have failed to submit any persuasive evidence that injuries they suffered within the statutory period were separate and distinct or qualitatively different from injuries suffered outside the statutory period, their claims are time barred. Because Mr. Mason's claim is derivative of his wife's, *see Jordan v. Lipsig, Sullivan, Mollen & Liapakis, P.C.*, 689 F.Supp. 192, 196–97 (S.D.N.Y.1988), his claim also is barred.

■ The plaintiffs next argue that IBM continued to breach its duty to warn the plaintiffs of the dangers of its equipment, thereby extending the commencement of the running of the statute of limitations and thus, even the plaintiffs whose claims are otherwise time barred are entitled to recover for IBM's continuing failure to warn of the dangers of its products. This argument also must fail. Even when a violation of a continuing duty to warn is alleged, the claim accrues when the injury first manifests itself through the onset of symptoms. *See Parajecki*, 899 F.Supp. at 1055 n. 7. To survive summary judgment, a plaintiff must demonstrate that she has suffered a new injury within the statutory period. *See Coughlin*, 650 N.Y.S.2d at 480 ("As for the claims premised upon defendant's duty to warn, the mere continuation of that duty into the limitations period is not enough to resurrect a cause of action premised upon an injury occurring earlier ... [the] plaintiff [must] tender[ ] proof sufficient to raise a question of fact with respect to whether she suffered any new injury, within the three years prior to the commencement of this action attributable to defendant's failure to warn."). Because none of the plaintiffs whose claims are time barred have demonstrated that they suffered a new injury within the statutory period, their claims will not be permitted to go forward on this basis.

od were new diagnoses, of which they had no prior knowledge. (*See* Mason Aff. ¶ 10, Pls.' Opp'n Ex. 3 ("Prior to May, 1992 I had not been diagnosed as suffering from bursitis or tenosynovitis related to my cash register scanner usage nor did I have reason to believe that I suffered from such."); Proctor Aff. ¶ 13, Pls.' Opp'n Ex. 2 ("Prior to April, 1992, I had not been diagnosed as suffering from impingement syndrome related to my usage of the cash register scanner, nor did I have reason to believe that I suffered from such.").) This demonstrates that the diagnoses were new to the plaintiffs, not that the injuries were separate and distinct or qualitatively different from injuries they suffered outside the statutory period as required by New York law.

Finally, the plaintiffs argue that IBM should be equitably estopped from asserting the statute of limitations defense because it concealed the injurious nature of its products from the plaintiffs, thereby preventing the plaintiffs from realizing that they had a cause of action. "[A] defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Simcuski v. Saeli*, 44 N.Y.2d 442, 406 N.Y.S.2d 259, 262, 377 N.E.2d 713, 716 (1978). If the defendant has made actual misrepresentations to the plaintiff, the plaintiff must demonstrate that she justifiably relied upon those misrepresentations in failing to bring the action in a timely manner. *See id.; Jordan v. Ford Motor Co.*, 73 A.D.2d 422, 426 N.Y.S.2d 359, 360 (4th Dep't 1980). If the defendant has concealed information without actual misrepresentation, the plaintiff must demonstrate a fiduciary relationship that obligated the defendant to inform the plaintiffs of the underlying claim. *See Jordan*, 426 N.Y.S.2d at 360–61.

The plaintiffs have not produced any evidence sufficient to show that IBM induced them through fraud, misrepresentation, deception, or concealment to delay filing of the suit. Nor have they introduced any evidence that they justifiably relied upon IBM's alleged misrepresentations or that IBM had a fiduciary obligation to inform them of their potential claims. If "the injured party is simply unaware that a cause of action is available to h[er], either due to lack of diligence on h[er] own part or because of the difficulty of discovering the injury, the courts have not applied the doctrine of equitable estoppel." *Id.* at 361. Accordingly, the doctrine of equitable estoppel is inapplicable to these claims.

In sum, for the reasons stated above, the claims of plaintiffs Laurie Taylor, Janet and Jacob Roth, and Mary and John Cunningham are not time barred, and summary judgment will be denied. Their claims, together with that of Donna Mills, will proceed. The claims of Shirley and James Grimes, Milton Mosley, Susan Brenner and Jon Brenner, Deborah and Harry Mason, and Elizabeth Proctor are time barred, and summary judgment will be granted.

A separate order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. the defendant IBM's motion for summary judgment is GRANTED as to the claims of Shirley and James Grimes, Milton Mosley, Susan and Jon Brenner, Deborah and Harry Mason, and Elizabeth Proctor;

2. the defendant IBM's motion for summary judgment is DENIED as to the claims of Laurie Taylor, Janet and Jacob Roth, and Mary and John Cunningham and DENIED as moot regarding the claims of Bobbie and Al Jenkins; and

3. the clerk shall mail copies of the accompanying Memorandum and this Order to counsel of record.